**IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **MARTHA STRINGER and PAUL STRINGER, Attorneys in Fact for Kimberly Stringer,** | : | |
| | : | |
| **Plaintiff,** | : | |
| **v.** | : | **Civil Action No. 22-1525-BMS** |
| | : | |
| **ANDREW KOVACH, COUNTY OF BUCKS, et al.,** | : | |
| | : | |
| **Defendants.** | : | |
| | : | |

**BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

By:    Jeffery M. Scott, Esq.
        Kerri E. Chewning, Esq.
        ARCHER & GREINER, P.C.
        Three Logan Square
        1717 Arch Street
        Suite 3500
        Philadelphia, PA 19103
        Tel: 215-279-9693
        Email: jscott@archerlaw.com
                    kchewning@archerlaw.com

Attorney for Defendants

## I.    FACTS AND PROCEDURAL HISTORY

Plaintiffs first filed the Complaint in this matter on April 20, 2022.  The original Complaint alleged claims against the County of Bucks and various of its employees related to incidents involving Kimberly Stringer, which occurred while she was placed at the Bucks County Correctional Facility as a pretrial detainee from April 14, 2020 until June 17, 2020.  See Compl. ¶19.  Plaintiffs' Complaint, which was filed nearly two years after the events in question, identified several officers of the BCCF by name but also included a paragraph identifying twenty "John Doe" defendants who remained to be identified and served.  See id. ¶15.  Plaintiffs alleged that information necessary to identify the defendants was requested of "Bucks County" but such access had not been provided.  Id.  Plaintiffs identified "use of force reports" as a source of necessary information for identifying the John Doe defendants.  See id.  Plaintiffs pled that they would seek leave to amend the Complaint to identify the remaining defendants within 20 days of "their identity being discovered."  Id.

The County of Bucks executed a waiver of service of summons.  [Doc. No. 3].  Summonses were also served on most of the correctly identified individual Defendants.[1]  On July 7, 2022, pursuant to an agreed upon extension, the originally served Defendants filed an Answer to Plaintiff's Complaint.[2] [Doc No. 13].  Plaintiffs later obtained an extension of time to serve Defendants Hines and Pagan (incorrectly identified as C.O. Pagone).  [Doc. No. 15].  On July 22, 2022, counsel for the original Defendants served Plaintiffs' counsel with use of force reports related to Ms. Stringer's incarceration.  See Pls.' Mtn. to Amend [Doc. No. 17-1].

---

[1] Plaintiffs apparently incorrectly identified Defendant Pagan as "C.O. Pagone."
[2] The original Defendants are the County of Bucks, Cueto, Forman, Kovach, Styers, Torres, and Wylie.  Plaintiffs would only stipulate to the extension of time if the original Defendants agreed to only file an Answer.

On August 9, 2022, Plaintiffs, for the first time, sought permission to file an Amended Complaint.  [Doc. No. 17].  Prior to the motion being filed, Plaintiffs obtained consent for leave to amend the Complaint from the original Defendants.  However, that consent was limited to the filing of the Amended Complaint and it was given only on behalf of the original Defendants.[3] Plaintiffs subsequent motion for leave to amend, also included a request for an extension of the deadline for service of the unnamed defendants.  [Doc. No. 17].  Consent was not sought or obtained for the relief Plaintiffs requested under Rule 4(m), thus Plaintiffs filed a withdrawal of the motion to amend the next day. [Doc. No. 18].  The Court issued an Order on August 10, 2022 granting the motion (which by then had been withdrawn) and extending the time for service of the unnamed defendants.  [Doc. No. 19].  Because Defendants did not have the opportunity to challenge the request for an extension of time to serve the unnamed defendants, those arguments are raised herein.

Plaintiffs filed an Amended Complaint on August 10, 2022, two years and four months after filing the initial Complaint.  [Doc. No. 20].  The Amended Complaint added twenty-two (22) new County Defendants[4]: Danyell Himes, Robert Devlin, Christine Pagan, William Miles, Andrew Lynn, C.O. Canterman, Julian Duprey, Craig Geibert, Selena Heilman, Lt. Brett Morris, Lt. Niall Mander, C.O. Murdoch, Thomaleya Sherrod, Kevin South, Anthony Cruz, Jacquelyn Gill, C.O. Mimes, Chelsea MacIntyre, Sgt. Langston Mason, Crystal Biemuller, C.O. Hughes, C.O. G. Williams, and Zachary Nester.

---

[3] Archer & Greiner was not engaged to represent the newly identified John Doe Defendants until after they were named in the Complaint and waivers of service were requested.  Thus, the consent to the requested amendment was given only on behalf of the original Defendants.
[4] Although Crystal Biemuller was originally named as a Defendant, she was never served, so she is still a "new" defendant to this action.

Despite adding more than twenty (20) brand new parties, the Amended Complaint still lacks details about how each of these individual Defendants participated in a violation of Ms. Stringer's constitutional rights.  Service was accepted on behalf of the newly identified Defendants and this motion timely follows.

Plaintiffs' Amended Complaint alleges that Ms. Stringer "struggled with mental illness including Bipolar Disorder."  See id. ¶39.  The Amended Complaint alleges that Ms. Stringer's mental illness worsened in the beginning of 2020, before her incarceration, leading her to strike her neighbor and make threatening statements.  See id. ¶43.  She was arrested by the Falls Township police as a result and housed at Bucks County Correctional Facility ("BCCF").

Plaintiffs allege that during Ms. Stringer's incarceration at BCCF, she was subjected to "unreasonable and excessive uses of force."  Id. ¶49.  She often stripped off her clothes and refused to comply with corrections officers' directives.  See id. ¶¶42, 47.  The Amended Complaint acknowledges that Ms. Stringer did not comply with the reasonable prison directives because of her mental health and that her interactions with prison staff resulted from her refusal to comply with directives.  See Am. Compl. ¶¶ 53, 56, 59, 60, 64, 65.  At the height of the pandemic, amid capacity limitations at the State Mental Hospital that prevented usual transfers, Ms. Stringer was transferred to the State Mental Hospital in Norristown on or about June 17, 2020.[5]  See Am. Compl. ¶38.

---

[5] In addition to receiving use of force reports, in July of 2022, Plaintiffs' counsel also received a production of emails related to the delays in placement at the State Mental Hospital, which refused Ms. Stringer's admission because of COVID.  Plaintiffs' Amended Complaint does not disclose this pivotal fact that was certainly well-known to the Plaintiffs and counsel.

## II.     ARGUMENT

### A.     Plaintiffs' Complaint Fails to State a Claim Under 28 U.S.C. §. 1983.

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a party, in responding to a

pleading, may file a Motion to raise the defense of "failure to state a claim upon which relief can

be granted."  Specifically,

> [u]nder Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a 'short
> and plain statement of the claim showing that the pleader is entitled to relief.' . . .
> [T]he pleading standard Rule 8 announces does not require 'detailed factual
> allegations,' but it demands more than an unadorned, the-defendant-unlawfully-
> harmed-me accusation.  A pleading that offers 'labels and conclusions' or 'a
> formulaic recitation of the elements of a cause of action will not do.'  Nor does a
> complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual
> enhancement.'

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S.

544, 555 (2007)).  Thus, to survive a motion to dismiss, "a complaint must contain sufficient

factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Id.

(quoting Twombly, 550 U.S. at 570); see also Mack v. Bear Stearns Residential Mortgage Corp.,

755 F. Supp. 2d 651, 655 (E.D. Pa. 2010) (quoting Victaulic Co. v. Tieman, 499 F.3d 227, 234

(3d Cir.2007)) ("To survive a motion to dismiss, a civil plaintiff must allege facts that 'raise a

right to relief above the speculative level . . . .'").

In considering a Rule 12(b)(6) Motion, the court "must accept as true the factual

allegations in the complaint and all reasonable inferences that can be drawn from them."

Schuylkill Energy Res., Inc. v. Pennsylvania Power & Light Co., 113 F.3d 405, 417 (3d Cir.

1997) (citing Fuentes v. S. Hills Cardiology, 946 F.2d 196, 201 (3d Cir. 1991)).  While accepting

"as true all well-pled allegations, [a court] need not credit the non-movant's conclusions of law

or unreasonable factual inferences."  Curay-Cramer v. Ursuline Acad. of Wilmington Del., Inc.,

450 F.3d 130, 133 (3d Cir. 2006).  Nor is the court "compelled to accept . . . 'a legal conclusion couched as a factual allegation.'"  Baraka v. McGreevey, 481 F.3d 187, 195 (3d Cir. 2007).

Under Iqbal, the Supreme Court formalized a "two-pronged approach" that underlies a decision on a motion to dismiss.  Perez, 701 F. Supp. 2d at 662 (citing Iqbal, 556 U.S. at 679).  First, while a court must accept as true all allegations in a complaint, this principle is inapplicable to legal conclusions.  "Threadbare recitals of the elements of cause of action, supported by mere conclusory statements, do not suffice."  Iqbal, 556 U.S. at 678.  Second, "only a complaint that states a plausible claim for relief survives a motion to dismiss."  Id. at 679.  Determining whether a claim is plausible is a "context-specific task," which "requires the reviewing court to draw on its judicial experience and common sense."  Id. at 679.

The Supreme Court further instructed that, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth."  Id. at 679; see also Bear Stearns, 755 F. Supp. 2d at 655 (E.D. Pa. 2010).  "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."  Iqbal, 556 U.S. at 679.

In evaluating the sufficiency of a claim, the court must first outline the elements the plaintiff must plead in order to state a claim for relief.  See Bistrian v. Levi, 696 F.3d 352, 365 (3d Cir. 2012).  The court should then separate the factual and legal elements of the claim and disregard any legal conclusions.  See id.  Finally, the court must "look for well-pled factual allegations, assume their veracity, and then 'determine whether they plausibly give rise to an entitlement to relief.'"  Id. (quoting Iqbal, 556 U.S. at 679).  If at the conclusion of this analysis, the court can only infer "the mere possibility of misconduct, the complaint has alleged – but it

has not shown – that the pleader is entitled to relief" and the complaint should be dismissed.

Fowler v. UPMC Shadyside, 578 F.3d 203, 210-211 (3d Cir. 2009) (internal quotations omitted).

Plaintiffs' Amended Complaint is a model of "canned" allegations.  Each paragraph simply restates the same boilerplate contentions of excessive force and conclusions that the force was unnecessary without providing any facts or details.  The Amended Complaint makes the same allegations about the incidents involving of use of O.C. spray and use of the restraint chair, but it does not add any further details about how each of the individuals' actions allegedly violated Ms. Stringer's rights.  For example, Plaintiffs continue to allege that Defendants engaged in "an unreasonable and excessive use of force on Kimberly Stringer."  See, e.g., Am. Compl. ¶¶ 57, 61, 69.

The factual allegations detailing how each individual Defendant violated Ms. Stringer's rights are non-existent, despite Plaintiffs having been provided with the use of force reports prior to the amendment.  See Compl. 15 (acknowledging that Plaintiffs would seek to amend the Complaint after receipt of the use of force reports related to Ms. Stringer's incarceration); Pls.' Mtn. to Amend [Doc. No. 17-1].  The allegations still lack sufficient factual detail.  For example, the Amended Complaint alleges that on or about May 11, 2020, "Officers Kovach, Wylie, Biemuller, Torres, A. Cruz, Geibert, Mime and/or John Doe … used Oleoresin Capsicum ("OC Spray") … on Ms. Stringer."  Am. Compl. ¶61.  The allegations do not detail which defendants committed which acts on Ms. Stringer.

This lack of clarity as to the alleged actors, and the boilerplate allegations do not satisfy the pleadings requirements or provide sufficient detail as to the elements of Plaintiffs' claims.  As such, the Amended Complaint should be dismissed for failure to state a claim.

1.  **Plaintiffs' Eighth Amendment Claim Is Misstated as an Eighth Amendment Claim and Fails as a Matter of Law.**

Pursuant to 28 U.S.C. §1983, Plaintiffs allege violations of Ms. Stringer's Eighth Amendment right to be free from excessive force.  To hold an individual Defendant liable under § 1983, Plaintiff "must establish (1) the violation of a right secured by the Constitution or laws of the United States, and (2) that the alleged deprivation was committed or caused by a person amenable to suit under § 1983 and acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988); Piecknick v. Pennsylvania, 36 F.3d 1250, 1255-56 (3d Cir. 1994).  "To impose liability under § 1983, a plaintiff must establish with particularity that the named defendant was directly and personally involved in the deprivation of plaintiff's rights." Payton v. Vaughn, 798 F. Supp. 258, 260 (E.D. Pa. 1992) (citing Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988)).  The allegations in the Complaint must show actual participation or actual knowledge and acquiescence in the unlawful conduct. Id.

Although Ms. Stringer was incarcerated at the time, she had not been convicted of a crime, and as such, she was a pretrial detainee at BCCF.  "[I]t is the Due Process Clause of the Fourteenth Amendment that protects pretrial detainees." Jacobs v. Cumberland Cnty., 8 F.4th 187, 193–94 (3d Cir. 2021) (citing Bell v. Wolfish, 441 U.S. 520, 535 (1979)).  A pretrial detainee's procedural due process claim is governed by Bell, which prohibits imposition of punishment on pretrial detainees.  441 U.S. at 535.  Thus, the Fourteenth Amendment protects pretrial detainees from "the use of excessive force that amounts to punishment." See Graham v. Connor, 490 U.S. 386, 395 n.10 (1989).

"Once the Government has exercised its conceded authority to detain a person pending trial, it obviously is entitled to employ devices that are calculated to effectuate this detention." Bell, 441 U.S. at 537.  Accordingly, "restraints that are reasonably related to the institution's

interest in maintaining jail security do not, without more, constitute unconstitutional punishment, even if they are discomforting." Id. at 540. "[A]bsent a showing of intent to punish, a court must determine if a particular restriction or condition, which may on its face appear to be punishment, is instead but an incident of a legitimate nonpunitive governmental objective." Fuentes v. Wagner, 206 F.3d 335, 344 (3d Cir. 2000).

In August of 2021, the Third Circuit clarified that in order to prevail on a claim of excessive force, a pretrial detainee must show that the force used was done purposely or knowingly and that it was "objectively unreasonable." Id. As such, an objective reasonableness standard applies. Id.

In assessing whether a pretrial detainee plaintiff has asserted a claim the court must look to the facts and circumstances of the case. Id. Those circumstances include, inter alia, the relationship between the need for the use of force and the force used as well as the severity of the security problem at issue, the threat perceived by the officer, and whether the inmate was actively resisting. Id. Each of these must be analyzed from the perspective of a "reasonable officer" in the prison setting with the understanding that "running a jail is 'an inordinately difficult undertaking.'" Id. (quoting Turner v. Safely, 482 U.S. 78, 84-85 (1987)). The safety and order in prisons requires the expertise of prison officials and affords them "substantial discretion to devise reasonable solutions to the problems they face." Id. (quoting Kingsley v. Hendrickson, 576 U.S. 389, 399 (2015)). There must be room for officers facing disturbances to make "split-second judgments in circumstances that are tense, uncertain, and rapidly evolving." Id. Not every push or shove, even if on review it may seem unnecessary gives rise to a constitutional violation. Id.

The Amended Complaint admits that Ms. Stringer did not comply with the reasonable prison directives and each of the identified interactions resulted from her refusal to comply with prison directives. See Am. Compl. ¶¶ 53, 56, 59, 60, 64, 65. Ms. Stringer, was non-compliant with prison directives leading to the escalations detailed in Plaintiffs' Amended Complaint. Those events are not actionable because they were undertaken in order to ensure the safety and security of the prison.

With respect to using a restraint chair with Ms. Stringer, Fuentes v. Wagner, is directly on point. 206 F.3d 335.[6] In Fuentes, the plaintiff, who was a pretrial detainee, was placed in a restraint chair after he was subdued following a struggle that occurred in his cell. See 206 F.3d at 339. The assistant warden authorized the use of the chair in accordance with prison policy and the plaintiff was confined for eight hours. See id. The Third Circuit analyzed the case under both a conditions of confinement standard and an excessive force analysis. See id. at 345-46. Because the use of the chair comported with the prison policy, and it was not used to punish him, the Third Circuit determined that there was no constitutional violation.[7] See id.

As the Amended Complaint acknowledges, Ms. Stringer was confined to the restraint chair as was needed for her safety. Of specific note is Plaintiffs' citation to the use of the

---

[6] Although subsequent precedent clarified the applicable standard, the Fuentes remains good law in the Third Circuit. Only the portion of the case in which the Court had applied the "malicious and sadistic" standard has been abrogated. See Jacobs, 8 F.4th at 194 n.5.

[7] The Third Circuit in Young analyzed Fuentes when it confronted the question of whether a convicted prisoner's claim that the use of a restraint chair constituted excessive force under the Eighth Amendment. Young, 801 F.3d 172, 178-79 (3d Cir. 2015). Ultimately, the Third Circuit found that Inmate Young had raised a fact issue as to whether he was subjected to excessive force because he was placed prone on the floor, his clothes were cut off for a strip search and officers put a spit mask on him. See id. Young did not resist any of these measures yet he was placed in a restraint chair naked and left in an air-conditioned psychiatric observation room with only a smock on his lap for more than 14 hours. He could barely walk when he was released. See id. The facts involving Ms. Stringer are dramatically different than those in Young.

restraint chair on May 10, 2020, which acknowledges that the chair could not have been used for an extended period of time.  The Amended Complaint states that prison officials used the restraint chair at 10:10 a.m. and again that same day, two hours later, at 12:25 p.m.  See id. ¶¶ 54-57 ("[A]t 10:10 a.m. Defendant Officers … placed her in a restraint chair … at or about 12:25 p.m. Defendant Officers … placed her back in a restraint chair).  Thus, by Plaintiffs' own admission, the restraint chair was not used for an excessive period of time.  Indeed, Plaintiffs' Amended Complaint does not allege that the length of time was excessive in any of the encounters.  Plaintiffs only allege that the timing was undetermined.  See id. ¶¶ 51, 54, 57, 62.

The claims arising from the guards using O.C. spray are similarly without merit.  See, e.g., Spada v. Houghton, Civ. No. 20-223, 2022 WL 4280519, at *8 (W.D. Pa. July 22, 2022) (declining to address pretrial detainee's claims regarding the use of O.C. spray because each use occurred during incidents with corrections officers); Robinson v. Testa, Civ. No. 20-263, 2021 WL5770211, at *4 (W.D. Pa. Dec. 6, 2021) (finding that use of O.C. spray on a non-compliant pretrial detainee did not constitute excessive force).

Plaintiffs' Amended Complaint does not allege that the guards used O.C. Spray or placed Ms. Stringer in the restraint chair to punish her or that the use was "without penological justification."  Hope, 536 U.S. at 737.  To be sure, the Amended Complaint alleges the exact opposite and contends that the force that was used resulted from Ms. Stringer's failure or refusal to comply with prison mandates on each occasion.  See Am. Compl. ¶¶ 53, 56, 59, 60, 64, 65.  In addition, as Plaintiffs acknowledge, the use of O.C. spray and the use of the restraint chair were both within the guidelines set by BCCF policy.  See Am. Compl. 107.

Plaintiffs fail to state a claim for a violation of Ms. Stringer's constitutional rights under the Fourteenth Amendment and the Amended Complaint must be dismissed.

### 2. The Amended Complaint Fails to Plead a Plausible Cause of Action Against the County

Contending that the County of Bucks maintained policies and procedures that led to a "pattern and practice of utilizing excessive force on mentally ill inmates, including use of O.C. Spray and restraint chairs when inmates were not capable of complying with guards' directives due to mental illness," Plaintiff alleges a municipal liability claim against the County of Bucks for violating "Kimberly Stringer's constitutional rights, including those guaranteed by the Eight [sic] and Fourteenth Amendment [sic] to the United States' Constitution."  Am. Compl. ¶¶ 101, 103.  Plaintiff alleges that the County of Bucks failed to properly train its officers or have a proper policy for the use of O.C. spray and restraint chairs.  See id. ¶105.  Although Plaintiffs' allegations set forth boiler-plate allegations against the County policy, Plaintiffs fail to assert a viable claim against the County.

For purposes of §1983, the County is treated as a municipality and are subject to liability under Monell v. New York City Dept. of Social Services, 436 U.S. 658 (1978).  Local government units and supervisors are not liable under § 1983 solely on a theory of respondeat superior. See Connick v. Thompson, 563 U.S. 51, 60 (2011); City of Oklahoma City v. Tuttle, 471 U.S. 808, 824 n. 8 (1985); Monell, 436 U.S. at 690–91, 694 (municipal liability attaches only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury"); Natale v. Camden County Correctional Facility, 318 F.3d 575, 583–84 (3d Cir. 2003).

Plaintiff failed to plead any facts which gives rise to a plausible claim against the County under §1983.  The Amended Complaint does not allege that any of the municipal policy makers had any knowledge of the circumstances surrounding Ms. Stringer.  As the Amended Complaint fails to assert a plausible claim against any individual defendant for an underlying violation of

Ms. Stringer's constitutional rights, there can be no claim asserted against the County.  Grazier v. City of Philadelphia, 328 F.3d 120, 124 (3d Cir. 2003) (holding that municipal liability requires the finding of an underlying constitutional violation).

Even if Plaintiffs' claims against the individual defendants survive, Plaintiffs' claim against the County must still be dismissed.  Plaintiff was required to plead that "'a [local] government's policy or custom . . . inflict[ed] the injury' in question."  Estate of Roman v. City of Newark, 914 F.3d 789, 798 (3d Cir. 2019) (alterations in original) (quoting Monell, 436 U.S. at 694).  "Policy is made when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict."  Id. (quoting Andrews v. City of Philadelphia, 895 F.2d 1469, 1480 (3d Cir. 1990) (alteration in original)). "A showing of simple or even heightened negligence will not suffice."  Brown, 520 U.S. at 407.  "When the policy or custom does not facially violate constitutional rights, a plaintiff "must demonstrate that the municipal action was taken with 'deliberate indifference' as to its known or obvious consequences." Brown, 520 U.S. at 407.

Plaintiff has not alleged any such facts against the County.  Plaintiffs assert only a bald accusation that prior to Kimberly Stringer's incarceration, there was a pattern and practice of utilizing excessive force on mentally ill inmates, including use of O.C. Spray and restraint chairs. See Am. Compl. ¶¶ 103, 107.  Further, there are no allegations indicating how any of the BCCF policies are constitutionally deficient.  Plaintiffs do not allege that the use of O.C. Spray violates constitutional rights.  Plaintiffs do not and cannot allege that the policies at issue were drafted in order to target individuals with mental illness or even that other mentally ill individuals sustained injuries as a result of the policies.

Plaintiffs cannot make blanket statements without any supporting facts and then hope to conduct discovery in order to ascertain whether such facts exist.  See Zuk v. Eastern Pa. Psychiatric Inst. of Med. College of Pa., 103 F.3d 294, 299 (3d Cir. 1996) ("Discovery is not intended as a fishing expedition permitting the speculative pleading of a case first and then pursuing discovery to support it; the plaintiff must have some basis in fact for the action.").  In any event, such allegations unsupported by facts, are insufficient and do not withstand dismissal.  See Fowler, 578 F.3d at 210-11.

Given the lack of factual allegations to support any finding that the policies at issue were unconstitutional or were created to violate inmates' constitutional rights, Plaintiffs' claim against the County of Bucks must be dismissed.

### B.   Assuming Arguendo Plaintiff's Complaint Sets Forth a Constitutional Claim, All Claims Asserted Against the Individual Defendants Must Be Dismissed Under the Qualified Immunity Doctrine

The doctrine of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Pearson v. Callahan, 555 U.S. 223, 231 (2009) (citing Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).[8]  "Qualified immunity balances two important interests – the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably."  Id.  The protection of qualified immunity applies regardless of whether the government official's error is "a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact."  Groh v. Ramirez, 540 U.S. 551, 567 (2004) (Kennedy, J., dissenting) (citing Butz v. Economou, 438 U.S. 478, 507 (1978) (noting that

---

[8] Consideration of qualified immunity at a motion to dismiss stage is proper.  Pearson, 555 U.S. at 237; see also Iqbal, 556 U.S. at 670, 674-75.

13

qualified immunity covers "mere mistakes in judgment, whether the mistake is one of fact or one of law")); see also Montanez v. Thompson, 603 F.3d 243, 250 (3d Cir. 2010) (citing Pearson, 555 U.S. at 231).

In Saucier v. Katz, the Court set forth a two-step analysis for evaluating claims of qualified immunity. 533 U.S. 194 (2001), overruled, Pearson, 555 U.S. at 223;[9] see also Bennett v. Murphy et al., 274 F.3d 133, 136 (3d Cir. 2002). "First, the court must determine whether the facts, taken in the light most favorable to the plaintiff, show a constitutional violation. If the plaintiff fails to make out a constitutional violation, the qualified immunity inquiry is at an end; the [state actor] is entitled to immunity." Bennett, 274 F.3d at 136.

> Once a court determines that there has been a constitutional violation, it must move to the second step and determine whether the constitutional right was clearly established. That is, in the factual scenario established by the plaintiff, would a reasonable state actor have understood that his actions were prohibited? The focus in this step is solely upon the law. If it would not have been clear to a reasonable state actor *what the law required* under the facts alleged, he is entitled to qualified immunity. If the requirements of the law would have been clear, the state actor must stand trial.

Bennett, 274 F.3d at 136-37 (emphasis in original).

In order to show that a constitutional right was clearly established *at the time of the alleged state action*, a plaintiff must show that "a reasonable state actor [would] have understood that his actions were prohibited." Bennett v. Murphy, 274 F.3d 133, 136 (3d Cir. 2002).

> The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful …; but it is to say that in the light of pre-existing law the unlawfulness must be apparent.

---

[9] The Supreme Court in Pearson addressed the order of the mandatory two-step analysis set for assessing qualified immunity set forth in Saucier. District courts may address, in any order, either step, depending upon the facts and circumstances of each case. Bayer v. Monroe County Children & Youth Servs., 577 F.3d 186, 191 (3d Cir. 2009). However, both steps are still required to defeat application of qualified immunity. See Pearson, 555 U.S. at 242.

Anderson v. Creighton, 483 U.S. 635, 640 (1987).  Unlawfulness can be apparent "even in novel factual circumstances."  Hope v. Pelzer, 536 U.S. 730, 741 (2002); Brosseau v. Haugen, 543 U.S. 194, 198 (2004) (per curiam) (emphasizing the need for attention to context in judging whether application of a general principle was clear under the circumstances).  "[T]he salient question … is whether the state of the law [at the time of the conduct] gave respondents fair warning that their [conduct] was unconstitutional."  Hope, 536 U.S. at 741; Groh v. Ramirez, 540 U.S. 551, 563 (2004).  Under the facts pled, Defendants are entitled to judgment under the doctrine of qualified immunity.

### 1.      Plaintiffs Have Not Alleged a Constitutional Violation.

For all the reasons already set forth herein, see Supra, II(A)(1), the Amended Complaint fails to state a claim for a constitutional violation.  The Amended Complaint also does not contain any facts which demonstrate that Defendants each violated Ms. Stringer's clearly established constitutional rights.  For that reason, the individual officers should be entitled to qualified immunity.

By Plaintiffs' own admission, Ms. Stringer was intractable and would not comply with the directives of prison officials.  See Am. Compl. ¶¶ 53, 56, 59, 60, 64, 65.  Plaintiffs' Amended Complaint also acknowledges that use of O.C. spray and the restraint chair were in accord with prison policy; Plaintiffs simply take issue with the existence of a facially valid policy.  See Am. Compl. ¶¶ 102, 107.

Plaintiffs' self-serving statements that Ms. Stringer did not present a threat to prison guards do not save the claims here.  Notably absent is an allegation that Ms. Stringer was not a danger to herself.  Prison officials have a direct and legitimate governmental interest in maintaining the security and control of the prison.  See Sandin v. Conner, 515 U.S. 472, 482-83 (1995) ("[F]ederal courts ought to afford appropriate deference and flexibility to state officials

trying to manage a volatile environment.").  Disruption caused by an inmate must be addressed to ensure such control.  There is no requirement that prison guards wait until an inmate presents a risk to the safety of officers before they can implement measures to ensure compliance with routine directives.  See Hewitt v. Helms, 459 U.S. 460, 472 (1983).  For these reasons, and those previously discussed, Defendants should be entitled to qualified immunity.

> **2.      There is No Clearly Established Right Prohibiting the Use of Specified Force on Non-Compliant Mentally Ill Pretrial Detainees.**

Because there is no constitutional violation, there can be no clearly established right for pretrial detainees with mental illness to be free from the use of O.C. spray or a restraint chair when they are non-compliant with prison directives.  "Clearly established means that, at the time of the officer's conduct, the law was sufficiently clear that every reasonable official would understand that what he is doing is unlawful."  Jacobs, 8 F.4th at 197.

At the time of Ms. Singer's incarceration in 2020, there was not a robust consensus of law to put any of the individual Defendants on notice that their use of O.C. spray and/or a restraint chair to subdue a recalcitrant inmate in accordance with prison policies would violate the Due Process Clause.  Indeed, the Third Circuit very recently acknowledged that it was not clear what standard applied to pretrial detainee claims of excessive force.  Jacobs, 8 F.4th at 194, 197.

In August of 2021, the Third Circuit acknowledged that the standard used in analyzing an excessive force claim asserted by a pretrial detainee when force is needed to subdue the inmate was not at all clear.  Jacobs, 8 F.4th at 194.  The pretrial detainee in Jacobs had been assaulted in 2015 by officers well after an altercation in the cellblock had been concluded.  See id. at 191-92.  The video of the encounter demonstrated that Jacobs did not resist being handcuffed but the

defendant guards nonetheless grabbed him and struck him.  See id.  The district court had denied

summary judgment on qualified immunity and one of the officers appealed.

In affirming the district court, the Third Circuit found it necessary to analyze existing

authority.  See id. at 193 ("Before we can decide whether the evidence depicts a violation of a

constitutional right, we must first clarify what constitutional provision governs Jacob's claims").

After examining both the Eighth and Fourteenth Amendments in the context of a prison

disturbance, the Third Circuit discerned the applicable standard as objective reasonableness:

> The language of the two Clauses [Eighth and Fourteenth] differs, and the nature
> of the claims often differs. And, most importantly, pretrial detainees (unlike
> convicted prisoners) cannot be punished at all, much less 'maliciously and
> sadistically.'"  Instead, the Court held that "a pretrial detainee must show only
> that the force purposely or knowingly used against him was objectively
> unreasonable.

Id. at 194 (internal quotations and citations omitted).  The Court acknowledged that "in excessive

force cases, it can be difficult for officers to know how previous judicial opinions apply to new,

tense-situations."  Id. at 196.  In light of this, "officers are entitled to qualified immunity unless

existing precedent 'squarely governs' the specific facts at issue."  Id. (quoting Kisela v. Hughes,

138 S. Ct. 1148, 1153 (2018)).  The existing precedent must put it "beyond debate" that the

subject actions are unlawful.  Id. (quoting Ashcroft v. al-Kidd, 563 U.S. 731, 741 (2011)).  The

Third Circuit acknowledged that officers are entitled to qualified immunity if the facts are within

the "hazy border between excessive and acceptable force."  Id. at 196.

In applying this clarified standard to what it construed as the plaintiff's Fourteenth

Amendment claim, the Third Circuit found that there were fact questions about whether the

officer's actions were objectively reasonable and therefore affirmed the district court.  See id.

The Court found that although there was no audio, the evidence suggested the plaintiff had done

nothing to warrant the application physical force.  See id.  Because of the potential for confusion

17

as to what a "reasonable officer" would have understood the applicable standard to be, the Third

Circuit also whether the behavior, if true, would have violated the Eighth Amendment as well.

See id. at 197 n.9 ("[I]t was clearly established that Williams's conduct would violate the Eighth

Amendment's more stringent malicious-and-sadistic standard.").

At the time of Ms. Stringer's incarceration, the most analogous case involving the use of

restraints, specifically a restraint chair, on a pretrial detainee was Fuentes.[10]  See, 206 F.3d at

345-46 (finding no constitutional violation for conditions of confinement or excessive force

because defendants followed prison policy regarding use of restraint chair).  As the Third Circuit

noted, the Supreme Court's decision in Kingsley, 576 U.S. 389 only abrogated Fuentes as to that

portion that had applied the Eighth Amendment's malicious-and-sadistic standard to pretrial

detainees.  The determination that using restraints in compliance with prison policies does not

violate a pretrial detainee's rights remains controlling law.  See Jacobs, 8 F.4th at 194 n.5.

As of June through August of 2020, the status of the law was sufficiently unclear that the

Third Circuit issued a precedential opinion a year later in Jacobs to clarify the applicable

standard.  In fact, Plaintiffs themselves plead an Eighth Amendment violation.  See Am. Compl.

¶84.  For these reasons, any violation of Ms. Stringer's rights were not clearly established so that

a reasonable corrections officer in 2020 would have known that their actions involving a

mentally ill inmate, within the bounds of the prison policies, would give rise to a constitutional

violation.  This Court should find that Defendants are immune from suit under the doctrine of

qualified immunity.  Pearson v. Callahan, 555 U.S. 223, 231 (2009).

---

[10] Although the Third Circuit also decided the Young case involving the use of a restraint chair,
that claim was analyzed under the Eighth Amendment because the plaintiff was convicted.  It
also presents dramatically different facts involving the use of the chair for nearly 14 consecutive
hours.  Those facts are not close to the facts alleged in this action.  Young, 801 F.3d at 174-75.

**C.      Plaintiffs Failed to Timely Identify and Serve the Unnamed John Doe Defendants and the Amended Complaint Does Not Relate Back.**

Plaintiffs' Complaint was filed with only two months to spare before the applicable two-year statute of limitations would bar their claims.  The original Complaint named John Doe defendants 1-20 without any further details.   Plaintiffs' Amended Complaint was filed more than two years after the original Complaint was filed.  Using the John Doe placeholder, however, does not preserve Plaintiffs' claims against those John Doe defendants.

Of particular application here, identifying John Doe defendants does not toll the statute of limitations.  See Garvin v. City of Philadelphia, 354 F.3d 215, 220 (3d Cir. 2003) (citing Talbert v. Kelly, 799 F.2d 62, 66 n.1 (3d Cir. 1986)).  A plaintiff naming a John Doe defendant must act diligently to identify the John Doe parties so that the individual can be timely joined and served before the expiration of the statute of limitations.  As set forth in Plaintiffs' motion for leave to amend, Plaintiffs asked for certain reports on June 17, 2020 and then did not conduct any follow-up before filing the Complaint on the eve of the expiration of the statute of limitations.  See Pls.' Mtn. to Amend [Doc. No. 17-1] at 2.

In actions brought under §1983, the state statute of limitations for personal injury actions applies.  Owens v. Okure, 488 U.S. 235, 236 (1989).  In Pennsylvania, the applicable statute of limitations for §1983 actions is two-years, the same that is applicable to personal injury actions.  See Garvin, 354 F.3d at 220 (citing 42 Pa. Cons. Stat. Ann. § 5524(7)).  As these Defendants were identified well after the expiration of the statute of limitations, the Amended Complaint should be dismissed as to the former John Doe defendants.

In limited circumstances, however, the relation back doctrine "can ameliorate the running of the statute of limitations on a claim by making the amended claim relate back to the original, timely filed complaint."  Singletary v. Pa. Dept. of Corr., 266 F.3d 186, 193 (3d Cir. 2001).

Federal Rule of Civil Procedure 15(c) governs when an amended complaint identifying a John Doe defendant relates back to the original complaint.  <u>Garvin</u>, 354 F.3d at 220.  For an amended complaint identifying a John Doe to relate back, a plaintiff must show:

> (1) the claim or defense set forth in the amended pleading arose out of the conduct, transaction or occurrence set forth in the original pleading; (2) within the time period provided in Rule 4(m), the party or parties to be added received notice of the institution of the suit and would not be prejudiced in maintaining a defense; and (3) the party sought to be added knew that, but for a mistake concerning his or her identity, he or she would have been made a party to the action.

<u>Id.</u> at 222; Fed. R. Civ. P. 15(c)(1)(C).  Replacing a John Doe with an actual person amounts to the naming of a party under Rule 15(c), and the amended complaint will relate back only if these three conditions are satisfied.  "There is no allowance in Rule 15(c) for inquiry into a party's delay in moving for leave to amend. Such equitable considerations ... do not relate to any of the enumerated conditions of Rule 15(c)."  <u>Arthur v. Maersk, Inc.</u>, 434 F.3d 196, 203 (3d Cir. 2006).

Plaintiff identified or re-named twenty-one new Defendants after the expiration of the statute of limitations.  As the claims in the original and Amended Complaints are the same, the first requirement is satisfied.  Plaintiff cannot satisfy the second and third factors.

### 1.    The John Doe Defendants Did Not Receive Timely Notice.

Rule 4(m) of the Federal Rules of Civil Procedure requires defendants be served within 90 days of the filing of the complaint.  <u>See</u> Fed. R. Civ. P. 4(m).  "The Court of Appeals for the Third Circuit has taken a strict approach toward the Rule, consistently upholding dismissals of actions where there has not been meticulous effort to comply with its service provisions."  <u>In re City of Philadelphia Litig.</u>, 123 F.R.D. 515, 518 (E.D. Pa. 1988).

There is no dispute; Plaintiffs did not serve the newly named Defendants with the summons and complaint within 90 days of filing the original Complaint.  <u>Compare</u> [Doc. No. 1] dated 4/20/22 <u>with</u> [Doc. Nos. 22-43] dated 8/12/22.  The August 2022 request for waiver of

service of summons occurred more than 90 days after the original Complaint was filed but also more than two years after the accrual of any claims in this action.  See Am. Compl. ¶38 (alleging that Ms. Stringer was moved out of BCCF and into a mental health facility in June of 2020).

"[T]he 'prejudice' to which the Rule refers is that suffered by one who, for lack of timely notice that a suit has been instituted, must set about assembling evidence and constructing a defense when the case is already stale."  Garvin, 354 F.3d at 222 n.4 (quoting Nelson v. County of Allegheny, 60 F.3d 1010, 1014–15 (3d Cir.1995)).  Given that more than two years have passed since the events in question, some of these newly identified Defendants are no longer employed by BCCF.  In any event, having to defend a lawsuit involving events that occurred more than two years ago, without the Complaint providing any level of detail about their individual involvement, is prejudicial.  The failure to establish this required element is sufficient to dismiss the Amended Complaint as to the newly added Defendants.

### 2.      Plaintiffs Cannot Demonstrate Notice or Knowledge.

Plaintiff is further precluded from relating the Amended Complaint back because Plaintiffs must also demonstrate that the John Doe defendants who are now identified by name had actual or imputed knowledge of the lawsuit before July 19, 2022 – ninety days after the original Complaint was filed.  See Walters v. Muhlenburg Twp. Police Dep't, 536 F. App'x 213, 216 (3d Cir. 2013).  While notice may be notice may be actual or constructive, it may only be imputed to the newly identified party if that party shared an attorney with the named party or the existing and new defendants share an identity of interest.  See id.  Plaintiff cannot establish either actual or constructive knowledge for any newly identified defendant.

There is nothing in the record to indicate that any of the newly identified John Doe defendants had any actual knowledge that they were the identified John Does in the Complaint.  Indeed, the original Complaint lacked any detail about the involvement of the John Doe

21

defendants to put any of the newly identified defendants on any actual notice.  Nor can Plaintiffs

establish imputed knowledge.

Under the "shared attorney" method of imputing notice to a new defendant, the

applicable test is not whether new defendants ultimately end up being represented by the same

attorney, but rather "whether the new defendants are being represented by the same attorney" at

the time the amendment is made.[11]  Id. (quoting Garvin, 354 F.3d at 223).  The newly named

Defendants were not be represented by the same counsel as the original Defendants during the

90-day period under Rule 4(m).  Absent such a showing, the shared attorney doctrine does not

save Plaintiffs' claims.

Similarly, the newly identified Defendants do not share a sufficient identity of interest

with the original Defendants in the case.  Corrections officers are not deemed to have notice

solely by virtue of their employment by Bucks County.  See id.  Identity of interest cannot be

established between an employer and staff-level employees.  See Singletary, 266 F.3d at 199

(finding that a prison psychologist did not share an identity of interest with the prison because he

was a staff-level employee).  Thus, Plaintiffs cannot establish an identity of interest to satisfy

Rule 15(c)(1)(C).

> **3.      Plaintiffs Cannot Show Good Cause for an Extension of Time under
> Rule 4(m).**

Good cause requires "at least as much as would be required to show excusable neglect."

Dominic v. Hess Oil V.I. Corp., 841 F.2d 513, 517 (3d Cir.1988).  "Excusable neglect 'seems to

require a demonstration of good faith on the part of the party seeking an enlargement and some

---

[11] The Garvin case arose in the context of a motion for leave to amend thus, the "future"
representation of the newly named defendants therein referred to the counsel that would have
entered an appearance for the new defendants if the leave to amend had been granted.  It is the
representation during the 90-day timeframe set forth in Rule 4(m) that is operative.

reasonable basis for noncompliance within the time specified in the rules.'" Id.  Courts consider "three factors in determining the existence of good cause under Rule 4(m): (1) reasonableness of plaintiff's efforts to serve[;] (2) prejudice to the defendant by lack of timely service[;] and (3) whether plaintiff moved for an enlargement of time to serve." Beautyman, 829 F. App'x at 583; see also MCI Telecomms. Corp. v. Teleconcepts, Inc., 71 F.3d 1086, 1097 (3d Cir. 1995).  The Third Circuit has denied a Rule 4(m) motion where the plaintiff failed to seek "an extension of time before the time allotted under the Rules had lapsed."  McCurdy v. Am. Bd. of Plastic Surgery, 157 F.3d 191, 196 (3d Cir. 1998).

The burden is on the Plaintiffs to establish good cause for failing to timely serve "John Doe" defendants and must demonstrate a level of good faith effort and diligence in attempting to serve process on "John Doe" defendants.  Lovelace v. Acme Markets, Inc., 820 F.2d 81, 84 (3d Cir. 1987). "'Half-hearted' efforts by counsel to effect service of process prior to the deadline do not necessarily excuse a delay, even when dismissal results in the plaintiff's case being time-barred due to the fact that the statute of limitations on the plaintiff's cause of action has run." Id.

Here, Plaintiffs filed their Complaint on April 20, 2022.  On August 9, 111 days after the initial filing, Plaintiffs moved to file an amended complaint identifying individuals listed as John Does 1-20 and for extension of time to serve the newly-named defendants. Doc. 17.

Plaintiffs state that they have conducted months of good-faith effort to obtain the identities of the "John Doe" corrections officers throughout the discovery process.  However, the only evidence in the record to show this is a letter from over two years ago dated June 17, 2020, requesting the preservation of evidence. There is nothing further in the record to show Plaintiffs' diligence in obtaining the identities of the unnamed officers.

Plaintiffs' failure to seek an extension of time in a timely fashion should be considered undue delay and relying on a letter written over two years ago primarily to preserve records should not be considered sufficient diligence. See Mash v. Twp. of Haverford Dep't of Codes Enf't., No. Civ. 06-4497, 2007 WL 1490511, at *1 (E.D. Pa. May 18, 2007).  Because of Plaintiffs' lack of diligence, the Court should not grant an extension through its discretion.

Discretionary relief may be permitted when "the applicable statute of limitations would bar the refiled action, or if the defendant is evading service or conceals a defect in attempted service." Fed. R. Civ. P. 4(m), Advisory Committee Note, 1993 Amendments; see also Jackson v. Rahm & Haas Co., No. Civ. 03-5299, 2004 WL 1636978, at *2 (E.D. Pa. July 6, 2004). However, district courts within the Third Circuit have declined to grant an extension where failure of timely service under Rule 4(m) was the result of the plaintiff's "own dilatory and careless conduct."  Pfeifer v. New Jersey Re-Ins. Co., 304 F.R.D. 478, 480 (D.N.J. 2015).

For these reasons, Plaintiff's Amended Complaint, identifying twenty new individual Defendants, does not relate back to the original Complaint.  The newly identified Defendants should be dismissed.

### III.     CONCLUSION

Based on the foregoing reasons, the Moving Parties respectfully request this Court grant their Motion to Dismiss on all claims.

Date: October 10, 2022

/s/Jeffrey M. Scott
Jeffrey M. Scott
Kerri E. Chewning
Archer & Greiner, P.C.
1717 Arch Street
Philadelphia, Pennsylvania 19103
Phone:  215-279-9692
jscott@archerlaw.com
kchewning@archerlaw.com
Attorney for Defendants

## <u>CERTIFICATE OF SERVICE</u>

The undersigned counsel for Defendants certifies that the foregoing Motion to Dismiss,

Brief in Support of same were filed electronically with the Court using the Electronic Filing

System, and are available for viewing and downloading.

Date: October 10, 2022.                     */s/Jeffrey M. Scott*
                                            Jeffrey M. Scott
                                            Archer & Greiner, P.C.
                                            Three Logan Square
                                            Suite 3500
                                            1717 Arch Street
                                            Philadelphia, Pennsylvania  19103
                                            Phone:  215-279-9692
                                            Fax:      215-963-9999
                                            jscott@archerlaw.com
                                            Attorney for Defendants

225707093v1

25