**IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **MARTHA STRINGER and PAUL STRINGER, Attorneys in Fact for Kimberly Stringer,** | : | |
| | : | |
| **Plaintiff,** | : | |
| **v.** | : | **Civil Action No. 22-1525-BMS** |
| | : | |
| **ANDREW KOVACH, COUNTY OF BUCKS, et al.,** | : | |
| | : | |
| **Defendants.** | : | |

## NOTICE OF APPEAL

Notice is hereby given that Defendants Cueto, Forman, Kovach, Styers, Torres, Wylie, Danyell Himes, Robert Devlin, Christine Pagan, William Miles, Andrew Lynn, C.O. Canterman, Julian Duprey, Craig Geibert, Selena Heilman, Lt. Brett Morris, C.O. Murdoch, Thomaleya Sherrod, Kevin South, Anthony Cruz, Jacquelyn Gill, C.O. Mimes, Chelsea MacIntyre, Sgt. Langston Mason, Crystal Biemuller, C.O. Hughes, C.O. G. Williams, and Zachary Nester hereby appeal to the United States Court of Appeals for the Third Circuit from this Court's Order (DE 48) entered on February 22, 2023, attached hereto as Exhibit 1.

Date: February 27, 2022

*/s/Jeffrey M. Scott*

Jeffrey M. Scott

*/s/Kerri E. Chewning*

Kerri E. Chewning, Esquire

Archer & Greiner, P.C.

Three Logan Square

Suite 3500

1717 Arch Street

Philadelphia, Pennsylvania  19103

Phone:  215-279-9692

Fax:      215-963-9999

jscott@archerlaw.com

Attorney for Defendants

## <u>CERTIFICATE OF SERVICE</u>

The undersigned counsel for Defendants certifies that the foregoing Notice of Appeal was filed electronically with the Court using the Electronic Filing System and is available for viewing and downloading.

Date: February 27, 2023

*/s/Jeffrey M. Scott*
Jeffrey M. Scott
Archer & Greiner, P.C.
Three Logan Square
Suite 3500
1717 Arch Street
Philadelphia, Pennsylvania 19103
Phone: 215-279-9692
Fax:    215-963-9999
jscott@archerlaw.com
Attorney for Defendants

226765185v1

# EXHIBIT 1

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **MARTHA STRINGER and PAUL** | : | |
| **STRINGER, Attorneys in Fact for** | : | |
| **Kimberly Stringer,** | : | **CIVIL ACTION** |
| **Plaintiffs,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **COUNTY OF BUCKS, et al.** | : | **No. 22-1525** |
| **Defendants.** | : | |

**ORDER**

      **AND NOW**, on this **22nd** day of **February 2023**, upon consideration of Defendants'
Motion to Dismiss (ECF 44), Plaintiffs' Opposition (ECF 45), and Defendant's Reply thereto (ECF
46), and consistent with the accompanying Memorandum of Law, it is **ORDERED** that the Motion
to Dismiss (ECF 44) is:

1.     **GRANTED** with respect to Plaintiffs' supervisory liability claim as to Defendant

       Sergeant Mander and Count II is **DISMISSED** as to Mander only;

2.     **GRANTED** with respect to Plaintiffs' municipal liability claim; their claim against

       the County in Count III is **DISMISSED**; and

3.     **DENIED** in all other respects.

      It is **FURTHER ORDERED** that, **on or before Wednesday, March 15, 2023,** Plaintiffs
may file a Second Amended Complaint amending their dismissed claims against Defendants
Bucks County and Sergeant Mander if they can do so consistent with the accompanying
Memorandum of Law. Plaintiffs may file a Second Amended Complaint, if any, or notify the Court
that they will proceed on their remaining claims.

                              **THE COURT:**

                              _____

                              **Berle M. Schiller, J.**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MARTHA STRINGER and PAUL** | : | |
| **STRINGER, Attorneys in Fact for** | : | |
| **Kimberly Stringer,** | : | **CIVIL ACTION** |
| **Plaintiffs,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **COUNTY OF BUCKS, et al.** | : | **No. 22-1525** |
| **Defendants.** | : | |

### MEMORANDUM

**Schiller, J.**                                                                 **February 22, 2023**

Kimberly Stringer was a pretrial detainee in the Bucks County Correctional Facility ("BCCF") in Doylestown, Pennsylvania. She alleges correctional officers, their supervisors, and Bucks County violated her constitutional rights pursuant to 42 U.S.C. § 1983 when she was held naked, sprayed with oleoresin capsicum spray ("pepper spray"), forcibly removed from her cell, and placed in a restraint chair numerous times even though she posed no danger to herself or any officer or inmate. Her parents, Martha and Paul Stringer, as the appointed powers of attorney on Kimberly's behalf, sue Bucks County and numerous BCCF correctional officers and supervisors (collectively, "Defendants"). Defendants move to dismiss all of Stringer's claims[1] for failure to state a claim and based on qualified immunity. They also seek to dismiss her claims against some officers as time barred. For the reasons that follow, the Court denies Defendants' motion in part and grants it in part consistent with this Memorandum.

---

[1]        Because Kimberly Stringer is the plaintiff-in-interest in his action, this Memorandum refers to the claims in the Amended Complaint as if she raises them on her own behalf.

## I.   <u>BACKGROUND</u>

Kimberly Stringer was detained in the BCCF for just over two months in Spring 2020 after a violent altercation with her neighbor. (Am. Compl., ECF 20, ¶¶ 38, 44-45.) She has mental illnesses which reduce her capacity to follow directions, including bipolar disorder and associated paranoia. (*Id.* ¶¶ 39, 41, 43.) While detained, Stringer was "almost always naked" and correctional officers[2] forced her into a restraint chair at least four times, pepper sprayed her at least twice, and forcibly removed her from her cell numerous times. (*Id.* ¶¶ 47, 51-69.) She suggests correctional officers utilized the restraint chair and pepper spray in tandem—and the same time. (*Id.* ¶¶ 62, 66, 71.) She posed no threat to any officer or inmate when the officers took these measures. (*Id.* ¶¶ 50, 52, 55, 58, 63, 67, 72, 87.) The correctional officers' supervisors[3] "authorized and approved" each use of force on Stringer even though they knew she had mental illnesses which caused her to not follow directions. (*Id.* ¶¶ 53, 56, 60, 64, 68.) At least two of the challenged interactions with Stringer were "planned use[s] of force." (*Id.* ¶¶ 64, 68.)

On June 17, 2020, Stringer was transferred from the BCCF to Norristown State Mental Hospital. (*Id.* ¶¶ 79-80.) The move occurred only days after publication of an article featuring other

---

[2]     Specifically, these correctional officers were Defendants Andrew Kovach, Kyle Wylie, Jenifer Forman, Crystal Biemuller, Christine Cueto, Jaqueline Torres, Officer Pagan, Officer Hines, Officer Stires, Officer Murdoch, Officer Mason, Officer G. Williams, Officer Nester, Officer Duprey, Officer Geibert, Officer Mime, Officer McIntyre, Officer Devlin, Officer South, Officer Canterman, Officer Sherrod, Officer Hughes, Officer A. Cruz, Officer Miles, Officer Heilman, Sergeant Mander, Sergeant Lynn, Sergeant Gill, and Lieutenant Morris. (Am. Compl. ¶¶ 2-33.)

[3]     Specifically, these supervisors were Defendants Andrew Kovach, Kyle Wylie, Sergeant Lynn, Lieutenant Morris, and Sergeant Mander. (*See id.* at Count II.)

Although Stringer asserts a supervisory liability claim against Sergeant Mander, she includes no allegations to show that Mander authorized or sanctioned the force used on Stringer, unlike the other supervisors.

2

inmates' firsthand accounts of Stringer's treatment in the BCCF. (*Id.* ¶¶ 78-79.) When Stringer arrived at Norristown, she was in a catatonic state. (*Id.* ¶ 80.) She could not speak and was "nearly entirely unresponsive." (*Id.*) Her time in the BCCF resulted in physical harm, including potential brain damage, a seizure disorder, and disfigurement from the repeated use of restraints and pepper spray, as well as mental suffering, including worsening mental illness. (*Id.* ¶ 81.)

Stringer's mother, Martha, emailed Bucks County Commissioner Diane Ellis-Marseglia inquiring about the reports of correctional officers' pepper spraying her daughter. (*Id.* ¶¶ 76-77.) Ellis-Marseglia replied that pepper spray was not used on Kimberly, despite reports to the contrary. (*Id.*)

## II.   <u>PROCEDURAL HISTORY</u>

Stringer filed her Complaint on April 20, 2022—nearly two years after her final day in the BCCF. (ECF 1.) The Complaint identified some BCCF correctional officers by name and named twenty John Doe officers. (*Id.* ¶ 15.) Pursuant to Federal Rule of Civil Procedure Rule 4(m), service of Stringer's Complaint was due by July 19, 2022. In June 2022, all but two of the originally-named Defendants accepted service. (ECF 3 to 10.) The County, Cueto, Forman, Kovach, Styers, Torres and Wylie answered the Complaint on July 7. (ECF 13.) On July 18, the Court granted Stringer an extension of time to serve her Complaint on two incorrectly identified defendants. (ECF 15.)

On August 9, Stringer moved for leave to amend her Complaint and to extend the service window for the original John Doe defendants. (ECF 17.) Stringer explained that Defendants had produced BCCF use-of-force records identifying the previously unknown John Doe correctional officers on July 22—days after the expiration of the original service window—and sought to name previously unidentified individual officers. (ECF 17-1 at 1-2.) The Court granted her motion on

August 10, and she filed the Amended Complaint the same day. (ECF 19, 20.) It asserts claims
under section 1983 for excessive force against the correctional officer defendants (Count I) and
their participating supervisors (Count II) and a section 1983 municipal liability claim against the
County based on an unconstitutional custom or policy and failure to train (Count III). Stringer's
Amended Complaint identifies twenty previously unnamed defendants in place of the John Doe
officers in her initial Complaint. (*See* ECF 20.) Defendants move to dismiss the Amended
Complaint in its entirety. (ECF 44.)

### III.   <u>STANDARD OF REVIEW</u>

In deciding Defendants' motion to dismiss for failure to state a claim pursuant to Federal
Rule of Civil Procedure 12(b)(6), the Court must accept as true all well-pleaded allegations in the
Amended Complaint and make all reasonable inferences in favor of Stringer. *Oakwood Lab'ys
LLC v. Thanoo*, 999 F.3d 892, 904 (3d Cir. 2021). A well-pleaded complaint "require[s] only a
short and plain statement of the claim showing that the pleader is entitled to relief" and need not
contain "detailed factual allegations." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 232-34 (3d Cir.
2008) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). To survive Defendants'
motion, Stringer must allege enough factual matter, taken as true, to suggest the required elements
of her claims and raise a reasonable expectation that discovery will reveal evidence of these
elements. *Id.*; *see also Oakwood Lab'ys*, 999 F.3d at 904. In turn, the Court must "draw on its
judicial experience and common sense" to find, at minimum, "a reasonable inference that the
defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).

### IV.   <u>DISCUSSION</u>

#### A. The twenty newly-named defendants will not be dismissed from the case because Stringer's amended claims relate back to her original Complaint.

Stringer's August 10, 2022 Amended Complaint names twenty defendants who were

previously identified as John Does 1-20: C.O. Murdoch, C.O. G. Williams, C.O. Nester, C.O. Duprey, C.O. Geibert, C.O. A. Cruz, C.O. Mime, C.O. McIntyre, C.O. Devlin, C.O. South, C.O. Canterman, C.O. Sherodd, C.O. Hughes, C.O. Miles, C.O. Heilman, Sgt. Mander, Sgt. Lynn, Sgt. Gill, Lt. Morris, and Langston Mason. Defendants argue these defendants should be dismissed because Stringer identified them well after the expiration of the two-year statute of limitations.[4] Stringer agrees the two-year statute of limitations for her section 1983 claims expired before she filed her Amended Complaint. Her last day in the BCCF was June 17, 2020. She filed her Amended Complaint on August 10, 2022—over two years later. However, the relation back doctrine "can ameliorate the running of a statute of limitations on a claim by making the amended claim relate back to the original, timely filed complaint." *Singletary v. Pa. Dep't of Corr.*, 266 F.3d 186, 193 (3d Cir. 2001) (Becker, C.J.). In Defendants' view, Stringer's claims against the newly-named defendants do not relate back under Federal Rule of Civil Procedure 15. *See* Fed. R. Civ. P. 15(c)(1). Stringer argues they do. She explains she amended her original timely filing after the statute of limitations expired because Defendants were dilatory in serving her with records identifying the officers.

Parties may amend a pleading by changing the party's name if the claim (1) "set forth in the amended pleading arose out of the conduct, transaction or occurrence set forth in the original pleading;" "(2) within the time period provided in Rule 4(m), the . . . parties to be added received notice of the institution of the suit and would not be prejudiced in maintaining a defense;" and "(3) the [parties] sought to be added knew that, but for a mistake concerning his or her identity, he

---

[4]   For section 1983 claims, the Court borrows the statute of limitations from personal injury actions—in Pennsylvania, two years. *Owens v. Okure*, 488 U.S. 235, 236 (1989); *Garvin v. City of Phila.*, 354 F.3d 215, 220 (3d Cir. 2003) (citing 42 Pa. Const. Stat. § 5524(7)).

or she would have been made a party to the action." *Garvin v. City of Phila.*, 354 F.3d 215, 222 (3d Cir. 2003) (citing *Singletary*, 266 F.3d at 194).

There is no dispute the first requirement is met. Stringer's claims against the newly-named correctional officers are very similar as those she asserted against John Doe Officers 1-20 in her original Complaint. Of note, Stringer added allegations about the May 11 use-of-force in her Amended Complaint. But these allegations all arise from the correctional officers' treatment of Stringer during her 2020 detention in the BCCF. Defendants do not suggest otherwise.

The second and third requirements are disputed. Defendants argue that because Stringer did not serve the newly-identified correctional officers within the original ninety-day service period pursuant to Rule 4(m), the claims may not relate back. (Defs.' Br. at 20-21.) But Defendants ignore the Court's August 10, 2022 Order granting Stringer a ninety day extension, which gave her until November 8, 2022 to serve the newly-identified officers.[5] (ECF 19.) She filed waivers of service for all newly-identified officers on August 31—well within the extended service window. Courts in our circuit have regularly held that Rule 15(c)'s notice period incorporates Rule 4(m)'s

---

[5]     The Court granted Stringer's requested extension after she showed there was good cause to do so. She began her pursuit of documents identifying John Does 1-20 in June 2020—almost two years before she filed her April 2022 Complaint. (Mem. of Law in Supp. of Pls.' Unopposed Mot. for Leave [Pls.' Good Cause Br.], ECF 17-1, at 5.) The County did not produce them until more than two years later on July 22, 2022—three days after the initial ninety-day service window expired. (*Id.*; Defs.' Br. at 1.) Stringer informed Defendants of her intent to amend her Complaint and substitute the identities of the John Does once she obtained the information from them. (Pls.' Good Cause Br. at 1-2.) Her diligent efforts to obtain the needed information, her communication to opposing counsel of her intent to amend, and Defendants' delay in producing the requested documents until after the service period created good cause for an extension of the service deadline. *See McCall v. Thazhathel,* No. 19-2568, 2022 WL 1136726, at *7-8 (E.D. Pa. Apr. 18, 2022) (finding good cause after plaintiff "worked diligently" and in "good-faith" to identify the John Does during original ninety-day service window but defendant-city did not disclose John Doe identifies until discovery); *Lopez v. Bucks Cnty.*, No. 15-5059, 2016 WL 3612056, at *4 (E.D. Pa. July 5, 2016) (finding good cause for service extension after plaintiff "notified the named [d]efendants and the [c]ourt from the outset of the case that she intended to amend the [c]omplaint to name the John Does" and diligently pursued discovery).

good cause extension. *McCall v. Thazhathel*, No. 19-2568, 2022 WL 1136726, at *6-7 (E.D. Pa. Apr. 18, 2022); *Lopez v. Bucks Cnty.*, No. 15-5059, 2016 WL 3612056, at *5 (E.D. Pa. July 5, 2016); *Hogan v. Borough of Brentwood*, No. 19-1016, 2021 WL 4951956, at *8 n.11 (W.D. Pa. Oct. 25, 2021); *see also* Fed. R. Civ. P. 15(c) advisory committee's note to 1991 amendment ("In allowing a name-correcting amendment within the time allowed by Rule 4(m), this rule allows not only the [90] days specified in that rule, but also any additional time resulting from any extension ordered by the court pursuant to that rule, as may be granted . . . ."). (*See* Pls.' Good Cause Br. at 3-6.) "Because the individual correctional officers [Stringer] seeks to add received actual notice of this action within the extended notice period and because there is no suggestion [they] will be prejudiced in defending this action on the merits," the second requirement is met. *Lopez*, 2016 WL 3612056, at *5.

Finally, having received actual notice during the extended service period that Stringer sought to add them to the suit and they waived service, they "also knew or should have known within the Rule 4(m) period that, but for a mistake concerning their identities," Stringer would have brought this action against them. *Id.* (citing *Smith v. City of Phila.*, 363 F. Supp. 2d 795, 803 & n.11 (E.D. Pa. 2005)); *see also Singletary*, 266 F.3d at 190-91 (suggesting Rule 15's "mistake requirement" is met when a civil rights plaintiff "seeks to replace 'John Doe' or 'Unknown Person' with the real defendant."); *Jamison v. City of York*, No. 09-1298, 2010 WL 3923158, at *3 (M.D. Pa. Sept. 30, 2010) ("The Third Circuit, however, does consider a plaintiff's lack of knowledge regarding a defendant's identity to constitute a mistake within the meaning of Rule 15(c)(1)(C)(ii)."). Therefore, the third and final requirement is met.

**B. Stringer states claims for excessive force against the correctional officer Defendants and their supervisors—except Sergeant Mander in his supervisory capacity.**

The Due Process Clause of the Fourteenth Amendment protects pretrial detainees from excessive force that amounts to punishment.[6] *Bell v. Wolfish*, 441 U.S. 520, 535 (1979); *Graham v. Connor*, 490 U.S. 386, 395-97 (1989); *Jacobs v. Cumberland Cnty.*, 8 F.4th 187, 194-95 (3d Cir. 2021). "[A] pretrial detainee must show *only* that the force purposely or knowingly used against him was objectively unreasonable." *Kingsley v. Hendrickson*, 576 U.S. 389, 400 (2015) (emphasis added); *see also Jacobs*, 8 F.4th at 194. This standard cannot be applied "mechanically." *Jacobs*, 8 F.4th at 194. Instead, the Court must pay "careful attention to the facts and circumstances of each particular case." *Kingsley*, 576 U.S. at 396. These circumstances include (i) "the relationship between the need for the use of force and the amount of force used;" (ii) "the extent of the plaintiff's injury;" (iii) "any effort made by the officer to temper or to limit the amount of force;" (iv) "the severity of the security problem at issue;" (v) "the threat reasonably perceived by the officer;" and (vi) "whether the plaintiff was actively resisting." *Jacobs*, 8 F.4th at 194-95 (quoting *Kingsley*, 576 U.S. at 397). The Court must analyze these facts and circumstances "from the perspective of a reasonable officer at the scene." *Kingsley*, 576 U.S. at 397; *see also Jacobs*, 8 F.4th at 195. To state a claim against any supervisor Defendant based on a theory of supervisory liability, Stringer must also plead that the relevant Defendant "directed others to violate [her] rights." *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010) (internal alterations and

---

[6]     Although Stringer asserts a claim under the Eighth Amendment, it applies to convicted individuals—not pretrial detainees. (Am. Compl. ¶¶ 84, 96, 101.) No one disputes Stringer was a pretrial detainee during her time in the BCCF. (*See* Am. Compl. ¶¶ 46, 88, 105-06; Defs' Br. in Supp. of Mot. to Dismiss [Defs.' Br.], ECF 44-1, at 7-8.) Therefore, the Fourteenth Amendment governs her claims. *Kingsley*, 576 U.S. at 400; *Jacobs*, 8 F.4th at 193-94. Her counsel appears to recognize this distinction in her Response to Defendants' Motion. (Pls.' Resp. to Defs.' Mot. to Dismiss, ECF 45, at 12.)

quotations omitted); *see also White v. Massini*, No. 22-1230, 2022 WL 1103793, at *3 n.4 (E.D. Pa. Apr. 13, 2022) ("[A] supervisor may be personally liable under [section] 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced . . . .") (internal citation and quotations omitted).

Stringer sets forth enough facts to plead a plausible claim that the correctional officers and their supervisors, with the exception of Seargent Mander, are liable for the use of objectively unreasonable force. To begin, Stringer was naked during nearly her entire time in the BCCF. (*Id.* ¶ 47.) Moreover, she did not pose a threat to any correctional officer, inmate, or herself on May 6, 10, 11, 20, 29 or after she was moved to a cell on the "Women's Special Housing Unit for Mental Health Inmates known as 'the Farm'" and officers forcibly removed her from her cell, pepper sprayed her, and handcuffed and confined her to a restraint chair. (*Id.* ¶¶ 49-72, 87.)

Specifically, Stringer alleges Defendant Officers Lynn, Canterman, Sherrod, Hughes, and Miles removed her from her cell and placed her in a restraint chair on May 6 as authorized by Sergeants Lynn, Kovach, Wylie and/or other John Does. (*Id.* ¶¶ 52-53.) On May 10, Officers Forman, Stires, G. Williams, Murdoch, Mander, Mason and/or other John Does handcuffed her and placed her in a restraint chair as authorized by Lieutenant Morris, Sergeants Lynn, Mason, Kovach, Wylie and/or John Doe 20. (*Id.* ¶¶ 54-56.) Officers Pagan, Forman, Mander, Mason, Nester, Duprey and/or John Doe 20 then returned two hours later to do the same as authorized by Lieutenant Morris, Sergeants Lynn, Mason, Kovach, Wylie, and/or John Doe 20. (*Id.* ¶¶ 54-60.) On May 11, Officers Kovach, Wylie, Torres, A. Cruz, Geibert, Mime and/or John Doe 20 entered Stringer's cell, pepper sprayed her, and then placed her in a restraint chair as authorized by Sergeants Kovach, Mason, Wylie, and/or John Doe 20. (*Id.* ¶¶ 61-64.) On May 20, Officers Kovach, Wylie, Torres, Cueto, McIntyre, Devlin, South, and/or John Doe 20 again entered

Stringer's cell, handcuffed her, placed her in a restraint chair, and pepper sprayed her, as planned and authorized by Sergeants Kovach, Mason, Wylie, and/or John Doe 20. (*Id.* ¶¶ 65-68.) On May 29, Officers Pagan, Heilman, Gill, and/or John Doe 20 entered Stringer's cell, physically restrained her, and involuntarily medicated her on May 29. (*Id.* ¶ 69.) Once Stringer was moved to the Farm, Officers Kovach, Wylie, Forman, Biemuller, Cueto, Torres, Pagan, Hines, Stires, Murdoch, Mander, Nester, Duprey, Geibert, A. Cruz, Mime, McIntyre, G. Williams, Devlin, South, Lynn, Canterman, Sherrod, Hughes, Miles, Heilman, Miles, and/or John Doe 20 continued to use unreasonable and excessive force against Stringer. (*Id.* ¶ 71.) Their conduct resulted in significant physical pain, potential brain damage and a seizure disorder, disfigurement, lost capacity to speak, and other mental suffering. (*Id.* ¶ 80-81.)

Taking as true Stringer's allegation that she posed no threat at the time of her interactions with Defendants, the great extent of her injuries, and no facts showing a significant security threat, the facts pled in her Amended Complaint support plausible excessive force claims against the correctional officers and each supervisor who is alleged to have participated in and sanctioned these events. *See Jacobs*, 8 F.4th at 194-96; *White v. Gonzales*, No. 22-1226, 2022 WL 1121031, at *3 (E.D. Pa. Apr. 14, 2022) (holding pretrial detainee stated a claim when he pled officer pepper sprayed him and suggested it was not "reasonably necessary"); *Bartol v. Dauphin Cnty.*, No. 21-180, 2022 WL 2306905, at *4-5 (M.D. Pa. June 27, 2022) (holding pretrial detainee stated claim when she pleaded officers confined her in cell and hit her despite lacking any threat). Count I may proceed against each officer Defendant. However, because Stringer includes no facts showing Sergeant Mander authorized or participated in any of the incidents alleged in the Amended Complaint, the Court will dismiss Count II—Stringer's supervisory liability claim—against

Mander. Stringer may proceed with her claims in Count II against the other supervisor Defendants.[7]

### C. Stringer fails to state a claim against Bucks County because she does not allege sufficient facts of any unconstitutional custom, policy, or failure-or-inadequacy training officers.

Defendants also move to dismiss Stringer's claim against the County. As an initial matter, the County "cannot be held liable under [section] 1983 on a respondeat superior theory." *Monell v. Dep't of Soc. Servs. City of N.Y.*, 436 U.S. 658, 691 (1978). Instead, to state a section 1983 claim for municipal liability, Stringer may allege that the County's policies or customs caused an alleged

---

[7]     Defendants also argue dismissal of Counts I and II is warranted because the correctional officers are protected by qualified immunity. Qualified immunity protects government officials "unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly' established at the time of the challenged conduct." *Wood v. Moss*, 572 U.S. 744, 757 (2014) (citing *Ashcroft v. al-Kidd*, 563 U.S. 731, 735, (2011)); *see also Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). A right is clearly established if "it would have been clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Reedy v. Evanson*, 615 F.3d 197, 224 (3d Cir. 2010). "This inquiry turns on the objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken." *Pearson*, 555 U.S. at 244 (quotations omitted). The protection balances two important interests—"the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Id.* at 231.

    The qualified immunity inquiry is premature at this stage of the litigation. The Third Circuit has cautioned that "it is generally unwise to venture into a qualified immunity analysis at the pleading stage as it is necessary to develop the factual record in the vast majority of cases." *Newland v. Reehorst*, 328 F. App'x 788, 791 n.3 (3d Cir. 2009); *cf. Olson v. Ako*, 724 F. App'x 160, 164-65 (3d Cir. 2018) (holding that a court should engage in a qualified immunity analysis at the pleading stage if there is a *detailed* factual record, something which may exist after a Rule 12(e) motion). The Court cannot presently determine whether it would have been clear to any of the correctional officers that their conduct was unlawful when interacting with Stringer. Defendants' motion is denied without prejudice to the extent that it rests on a qualified immunity defense. If appropriate, they may raise the defense at a later date. *See Rivera v. Chester Cnty.*, No. 15-5609, 2017 WL 1150622, at *6 (E.D. Pa. Mar. 28, 2017) (declining to engage in a qualified immunity analysis on the pleadings and allowing defendants to raise defense at later stage); *Tempest v. Emeigh*, No. 21-3346, 2022 WL 1084742, at *2 (E.D. Pa. Apr. 11, 2022) (same); *Jones v. United States*, No. 18-13943, 2022 WL 1830777, at *8 (D.N.J. June 3, 2022) (same); *Miller v. Burgett*, No. 19-5309, 2021 WL 2351993, at *4 (E.D. Pa. June 9, 2021) (same even when parties produced video footage of the alleged assault).

constitutional violation. *See City of Canton v. Harris*, 489 U.S. 378, 385 (1989) ("[A] municipality can be found liable under § 1983 only where the municipality *itself* causes the constitutional violation at issue.") (emphasis in original); *see also Monell*, 436 U.S. at 694. Alternatively, she may state a claim for municipal liability under section 1983 by alleging a failure to train, supervise or discipline employees. *See Estate of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019); *see also Forrest v. Parry,* 930 F.3d 93, 105 (3d Cir. 2019) ("A plaintiff may put forth that an unconstitutional policy or custom of the municipality led to his or her injuries, or that they were caused by a failure or inadequacy by the municipality that reflects a deliberate or conscious choice.") (citations omitted); *Reitz v. Cnty. of Bucks*, 125 F.3d 139, 145 (3d Cir. 1997) ("[I]n the absence of an unconstitutional policy, a municipality's failure to properly train its employees and officers can create an actionable violation of a party's constitutional rights under § 1983."). Because Stringer has not sufficiently alleged facts to support either basis for a finding of municipal liability under section 1983, the Court will dismiss her claims against Bucks County.

### 1.  Policy or Custom

To satisfy the requirements of Rule 12(b)(6), a plaintiff must "identify a custom or policy, and specify what exactly that custom or policy was." *McTernan v. City of York*, 564 F.3d 636, 658 (3d Cir. 2009). A policy "need not be passed by a legislative body, or even be in writing, to constitute an official policy for the purposes of [section] 1983." *Porter v. City of Phila.*, 975 F.3d 374, 383 (3d Cir. 2020). A decision from an official with decisionmaking authority may, in fact, constitute an official policy. *Id.* (citing *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483-84 (1986)). A course of conduct "so permanent and well settled as to constitute a custom or usage with the force of law" may constitute an official custom. *Monell*, 436 U.S. at 691.

Under either theory, Stringer "must show that an official who has the power to make policy

is responsible for either the affirmative proclamation of a policy or acquiescence in a well-settled custom." *Watson v. Abington Twp.*, 478 F.3d 144, 155-56 (3d Cir. 2007) (internal quotations omitted); *see also Lewis v. City of Phila.*, No. 16-6375, 2017 WL 839478, at *3 (E.D. Pa. Mar. 3, 2017). In addition, Stringer must show a "direct causal link between a municipal policy or custom and the alleged constitutional deprivation." *City of Canton*, 489 U.S. at 386; *see also Estate of Roman*, 914 F.3d at 798 (requiring a plaintiff to "demonstrat[e] an 'affirmative link' between the policy or custom and the particular constitutional violation he alleges"); *Bielevicz v. Dubinon*, 915 F.15 F.2d 845, 851 (3d Cir. 1991) ("[P]laintiffs must simply establish a municipal custom coupled with causation—i.e., that policymakers were aware of similar unlawful conduct in the past, but failed to take precautions against future violations."); *Pinkston v. City of Jersey City*, No. 19-13285, 2020 WL 4251485, at *3 (D.N.J. July 24, 2020).

Here, Stringer alleges Bucks County "maintained policies[,] procedures[,] and practices that it knew authorized the excessive use of force on mentally ill inmates . . . ." (Am. Compl. ¶ 107.) She also asserts there "was a pattern and practice of utilizing excessive force on mentally ill inmates, including use of [pepper] spray and restraint chairs when inmates were not capable of complying with guards' directives due to mental illness." (*Id.* ¶ 103.) However, she pleads no facts showing which policymaker promulgated an unconstitutional policy. *See Watson*, 478 F.3d at 155-56; *Witt v. City of Vineland*, No. 20-14678, 2021 WL 3465597, at *6 (D.N.J. Aug. 6, 2021) (dismissing municipal liability claim after plaintiff failed "to allege when these policies were adopted, by whom, or any content of the alleged formal policies."); *Boyden v. Twp. of Upper Darby*, 5 F. Supp. 3d 731, 743 (E.D. Pa. 2014) (suggesting plaintiff failed to state claim for an unconstitutional policy because he did not allege a final policymaker); *Siceloff v. Twp. of West Deer*, No. 11-783, 2013 WL 3989427, at *9 (W.D. Pa. Aug. 2, 2013) (dismissing *Monell* claim

13

when plaintiffs "failed to identify *any* policymaker") (emphasis in original). Nor does she plead any facts showing past incidents of excessive force at BCCF and that a policymaker acquiesced to any such well-settled custom. *See Ewing v. City of Phila.*, No. 20-3170, 2021 WL 6197368, at *6-7 (E.D. Pa. Dec. 30, 2021) (dismissing *Monell* claim when plaintiff did not plead any "factual support, statistical or otherwise" showing custom); *Robinson v. City of Phila.*, No. 15-1574, 2015 WL 5965003, at *9, 11-12 (E.D. Pa. Oct. 13, 2015) (dismissing *Monell* claim because plaintiff only alleged general customs that failed to demonstrate acquiescence); *cf. Beck v. City of Pittsburgh*, 88 F.3d 966, 972 (3d Cir. 1996) (holding plaintiff's factual allegations of similar incidents may demonstrate plausible existence of municipal custom through acquiescence); *Witt*, 2021 WL 3465597, at *5 (holding plaintiff pleaded enough information of an unconstitutional custom when he included facts of "numerous incidents" of past excessive force); *Harris v. City of Phila.*, 171 F. Supp. 3d 395, 401-02 (E.D. Pa. 2016) (finding a custom where there were "multiple incidents" of excessive use of force). More specificity is required to "nudge" her claim against the County "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

## 2. Failure-or-inadequacy

A plaintiff may also allege municipal liability through a "failure-or-inadequacy" claim. *Forrest*, 930 F.3d at 106. So, Stringer may assert a claim against the County by alleging its failure to train, supervise, or discipline its correctional officers violated her constitutional rights. *See City of Canton*, 489 U.S. at 380; *Estate of Roman*, 914 F.3d at 798; *Reitz*, 125 F.3d at 145. She must allege enough facts to show that the County's "failure to train its employees reflects a deliberate or conscious choice." *Estate of Roman*, 914 F.3d at 798 (citing *Brown v. Muhlenberg Twp.*, 269 F.3d 205, 215 (3d Cir. 2001)) (internal quotations omitted). "[T]he Supreme Court has held that the failure to train 'serve[s] as [a] basis for [section] 1983 liability only where [it] . . . amounts to

14

a deliberate indifference to the rights of the persons with whom the police come into contact.'" *Id.*

(quoting *City of Canton*, 489 U.S. at 388). Stringer may plead deliberate indifference by showing

that the County's (1) "policymakers kn[ew] that employees will confront a particular situation;"

(2) "the situation involve[d] a difficult choice or a history of employees mishandling;" and (3) "the

wrong choice by an employee will frequently cause deprivation of constitutional rights." *Id.* (citing

*Doe v. Luzerne Cnty.*, 660 F.3d 169, 180 (3d Cir. 2011)).

Stringer's failure-or-inadequacy claim cannot proceed because her Amended Complaint

does not provide enough facts to show deliberate indifference—which is ordinarily demonstrated

through allegations of past violative conduct. *Estate of Roman*, 914 F.3d at 798; *see also Connick

v. Thompson*, 563 U.S. 51, 62 (2011) (citing *Bd. of Comm'rs of Bryan Cnty. v. Brown*, 520 U.S.

397, 409 (1997)). She alleges "policymakers in Bucks County were . . . aware that individuals with

mental illness would have a reduced capacity to follow directives from guards at the BCCF" and

they "were aware" that uses of force on these individuals could be "detrimental to their physical

and mental health," but provides no supporting details to show how the unnamed policymakers

were aware of what she claims. (Am. Compl. ¶ 41-42.) She also alleges the County did not properly

train, supervise, and monitor correctional officers on use-of-force with respect to pepper spray or

restraint chairs on individuals with severe mental illness, but identifies no facts to show why

correctional officers were not properly trained, supervised, or monitored. (*Id.* ¶¶ 105-106.)

Stringer's general allegations are not enough to state a claim absent any allegations about other

past similar incidents or any other information that would suggest any failure to train amounts to

deliberate indifference. *See Scott v. Phila. Dep't of Prisons*, No. 18-71, 2019 WL 1490122, at *3-

4 (E.D. Pa. Apr. 3, 2019) (dismissing failure-to-train claim after the plaintiff failed to show

deliberate indifference and lack of training regarding mentally ill inmates); *Davis v. City of Phila.*,

284 F. Supp. 3d 744, 756 (E.D. Pa. 2018) (holding that a pattern of past violative conduct is typically necessary to make out a failure-to-train claim); *McLaughlin v. Cunningham*, No. 13-1926, 2014 WL 1225935, at *11-12 (E.D. Pa. Mar. 5, 2014) (dismissing failure-to-train claim because plaintiff did not "provide[] any additional factual information concerning the prior excessive-force incidents involving [defendant officer]," even though the existence of these incidents could be reasonably inferred from the complaint).

The Court dismisses Stringer's claim against the County (Count III) without prejudice.

### 3. Leave to Amend

In civil rights cases, "courts must allow amendment, unless doing so would be inequitable or futile." *McCall v. City of Phila.*, 396 F. Supp. 3d 549, 563-64 (E.D. Pa. 2019) (citing *Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 251 (3d Cir. 2007)); *see also* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires."). Amendment is futile if the amended complaint would not withstand a motion to dismiss. *Alvin v. Suzuki*, 227 F.3d 107, 121 (3d Cir. 2000). Stringer has already amended her complaint once with leave of Court, but it is not clear that she cannot amend her complaint to allege enough facts to state a basis for the exercise of municipal liability or to state a supervisory liability claim against Sergeant Mander. She may amend her excessive force claim against the County if she can do so consistent with *Monell's* requirements. If she can allege enough facts to state a supervisory liability claim against Sergeant Mander, she also may amend her Complaint to do that.

### V.   <u>CONCLUSION</u>

For the foregoing reasons, Stringer's Amended Complaint is dismissed in part. She may amend her claim against the County and her supervisory liability claim against Sergeant Mander

if she is able to do so consistent with this Memorandum.

      An appropriate Order will be docketed separately.