**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| MARTHA and PAUL STRINGER, | : | |
| Attorneys in Fact for KIMBERLY  STRINGER | : | |
|  198 Crestview Way | : | |
| Yardley, PA,19067 | : | |
| | : | |
| | : | |
| Plaintiffs | : | **NO:  2:22-cv-01525-BMS** |
| | : | |
| | : | |
| V. | : | |
| | : | |
| COUNTY OF BUCKS | : | |
| Bucks County Courthouse | : | |
| 555 East Court Street | : | |
| Doylestown, Pennsylvania 18901 | : | |
| | : | |
| AND | : | |
| | : | |
| ANDREW KOVACH | : | |
| c/o Bucks County Correctional Facility | : | |
| 1730 South Easton Road | : | |
| Doylestown, Pennsylvania 18901 | : | |
| | : | |
| AND | : | |
| | : | |
| KYLE WYLIE | : | |
| c/o Bucks County Correctional Facility | : | |
| 1730 South Easton Road | : | |
| Doylestown, Pennsylvania 18901 | : | |
| | : | |
| AND | : | |
| | : | |
| JENIFER FORMAN | : | |
| c/o Bucks County Correctional Facility | : | |
| 1730 South Easton Road | : | |
| Doylestown, Pennsylvania 18901 | : | |
| | : | |
| AND | : | |
| | : | |
| CRYSTAL BIEMULLER | : | |
| c/o Bucks County Correctional Facility | : | |
| 1730 South Easton Road | : | |
| Doylestown, Pennsylvania 18901 | : | |

AND                                                    :
                                                       :
                                                       :
CHRISTINE CUETO                                        :
c/o Bucks County Correctional Facility                 :
1730 South Easton Road                                 :
Doylestown, Pennsylvania 18901                         :
                                                       :
AND                                                    :
                                                       :
JAQUELINE TORRES                                       :
c/o Bucks County Correctional Facility                 :
1730 South Easton Road                                 :
Doylestown, Pennsylvania 18901                         :
                                                       :
AND                                                    :
                                                       :
C.O.  PAGAN  (Formerly Identified as Pagone)           :
c/o Bucks County Correctional Facility                 :
1730 South Easton Road                                 :
Doylestown, Pennsylvania 18901                         :
                                                       :
AND                                                    :
                                                       :
C.O. HINES                                             :
c/o Bucks County Correctional Facility                 :
1730 South Easton Road                                 :
Doylestown, Pennsylvania 18901                         :
                                                       :
AND                                                    :
                                                       :
C.O. STIRES (Formerly Identified as Styers)            :
c/o Bucks County Correctional Facility                 :
1730 South Easton Road                                 :
Doylestown, Pennsylvania 18901                         :
                                                       :
                                                       :
AND                                                    :
                                                       :
C.O. MURDOCH                                           :
c/o Bucks County Correctional Facility                 :
1730 South Easton Road                                 :
Doylestown, Pennsylvania 18901                         :
                                                       :
AND                                                    :
                                                       :

2

LANGSTON MASON                                    :
c/o Bucks County Correctional Facility            :
1730 South Easton Road                            :
Doylestown, Pennsylvania 18901                    :
                                                  :
AND                                               :
                                                  :
C.O. G. WILLIAMS                                  :
c/o Bucks County Correctional Facility            :
1730 South Easton Road                            :
Doylestown, Pennsylvania 18901                    :
                                                  :
AND                                               :
                                                  :
SERGEANT MANDER                                   :
c/o Bucks County Correctional Facility            :
1730 South Easton Road                            :
Doylestown, Pennsylvania 18901                    :
                                                  :
AND                                               :
                                                  :
C.O. NESTER                                       :
c/o Bucks County Correctional Facility            :
1730 South Easton Road                            :
Doylestown, Pennsylvania 18901                    :
                                                  :
AND                                               :
                                                  :
C.O. DUPREY                                       :
c/o Bucks County Correctional Facility            :
1730 South Easton Road                            :
Doylestown, Pennsylvania 18901                    :
                                                  :
AND                                               :
                                                  :
C.O. GEIBERT                                      :
c/o Bucks County Correctional Facility            :
1730 South Easton Road                            :
Doylestown, Pennsylvania 18901                    :
                                                  :
AND                                               :
                                                  :
C.O. A. CRUZ                                      :
c/o Bucks County Correctional Facility            :
1730 South Easton Road                            :
Doylestown, Pennsylvania 18901                    :

:
AND                                                    :
                                                       :
C.O. MIME                                              :
c/o Bucks County Correctional Facility                 :
1730 South Easton Road                                 :
Doylestown, Pennsylvania 18901                         :
                                                       :
AND                                                    :
                                                       :
C.O. MCINTYRE                                          :
c/o Bucks County Correctional Facility                 :
1730 South Easton Road                                 :
Doylestown, Pennsylvania 18901                         :
                                                       :
AND                                                    :
                                                       :
C.O. DEVLIN                                            :
c/o Bucks County Correctional Facility                 :
1730 South Easton Road                                 :
Doylestown, Pennsylvania 18901                         :
                                                       :
AND                                                    :
                                                       :
C.O. SOUTH                                             :
c/o Bucks County Correctional Facility                 :
1730 South Easton Road                                 :
Doylestown, Pennsylvania 18901                         :
                                                       :
AND                                                    :
                                                       :
SERGEANT LYNN                                          :
c/o Bucks County Correctional Facility                 :
1730 South Easton Road                                 :
Doylestown, Pennsylvania 18901                         :
                                                       :
AND                                                    :
                                                       :
C.O. CANTERMAN                                         :
c/o Bucks County Correctional Facility                 :
1730 South Easton Road                                 :
Doylestown, Pennsylvania 18901                         :
                                                       :
AND                                                    :
                                                       :

C.O. SHERROD                                    :
c/o Bucks County Correctional Facility          :
1730 South Easton Road                          :
Doylestown, Pennsylvania 18901                  :
                                                :
AND                                             :
                                                :
C.O. HUGHES                                     :
c/o Bucks County Correctional Facility          :
1730 South Easton Road                          :
Doylestown, Pennsylvania 18901                  :
                                                :
AND                                             :
                                                :
C.O. MILES                                      :
c/o Bucks County Correctional Facility          :
1730 South Easton Road                          :
Doylestown, Pennsylvania 18901                  :
                                                :
AND                                             :
                                                :
C.O. HEILMAN                                    :
c/o Bucks County Correctional Facility          :
1730 South Easton Road                          :
Doylestown, Pennsylvania 18901                  :
                                                :
AND                                             :
                                                :
SERGEANT GILL                                   :
c/o Bucks County Correctional Facility          :
1730 South Easton Road                          :
Doylestown, Pennsylvania 18901                  :
                                                :
AND                                             :
                                                :
LT. MORRIS                                      :
c/o Bucks County Correctional Facility          :
1730 South Easton Road                          :
Doylestown, Pennsylvania 18901                  :
                                                :
                              Defendants.        :

## SECOND AMENDED CIVIL ACTION COMPLAINT

Plaintiffs, Paula and Martha Stringer, as powers of attorney for their daughter, Kimberly Stringer, by and through their attorneys, Kline & Specter, alleges as follows:

1.     This action arises from the excessive use of force by guards at the Bucks County Correctional Facility (herein "BCCF") on Kimberly Stringer, a mentally ill woman while she was housed at the BCCF from April 14, 2020 until June 17, 2020.   This included repeatedly pepper spraying Ms. Stringer for purportedly not complying with guards' commands despite her inability to do so due to mental illness.   The excessive force utilized on Ms. Stringer was a foreseeable and direct result of the conduct of the individual defendants and County of Bucks whose authorized the use of excessive and unconstitutionally unreasonable force on mentally ill inmates.

## PARTIES

2.     Plaintiffs, Martha and Paul Stringer, are the parents of Kimberly Stringer, and adult residents of the Commonwealth of Pennsylvania, currently residing at 198 Crestview Way, Yardley, PA 19067.

3.     Plaintiffs are bringing this action as the appointed powers of attorney on behalf of Kimberly Stringer.

4.     Defendant, County of Bucks (herein "Bucks County"), is a county, political subdivision, and governmental entity in the Commonwealth of Pennsylvania, organized and existing under the laws of the Commonwealth of Pennsylvania, with a principal place of business at Bucks County Courthouse, 555 East Court Street, Doylestown, Pennsylvania 18901.

5.     Defendant, Andrew Kovach (herein "Defendant Kovach"), is an adult person and resident of the Commonwealth of Pennsylvania with a business address at 1730 South Easton Road, Doylestown, Pennsylvania 18901. Defendant Kovach is a corrections officer and/or

sergeant and supervisor of other corrections officers employed by the Bucks County Correctional Facility and/or Bucks County.  At all times relevant hereto, was acting under color of state law and under the authority provided to him as a corrections officer at BCCF.

6.      Defendant, Kyle Wylie (herein "Defendant Wylie"), is an adult person and resident of the Commonwealth of Pennsylvania with a business address at 1730 South Easton Road, Doylestown, Pennsylvania 18901. At all times relevant hereto, Defendant Wylie was a corrections officer and/or sergeant and supervisor of other corrections officers employed by the Bucks County Correctional Facility and/or Bucks County.  At all times relevant hereto, was acting under color of state law and under the authority provided to her as a corrections officer at BCCF.

7.      Defendant, Jenifer Forman (herein "Defendant Forman"), is an adult person and resident of the Commonwealth of Pennsylvania with a business address at 1730 South Easton Road, Doylestown, Pennsylvania 18901. Defendant Forman is a corrections officer employed by the Bucks County Correctional Facility and/or Bucks County.  At all times relevant hereto, was acting under color of state law and under the authority provided to him as a corrections officer at BCCF.

8.      Defendant, Crystal Biemuller, (herein "Defendant Biemuller") is an adult person and resident of the Commonwealth of Pennsylvania with a business address at 1730 South Easton Road, Doylestown, Pennsylvania 18901. Defendant Biemuller is a corrections officer employed by the Bucks County Correctional Facility and/or Bucks County.  At all times relevant hereto, was acting under color of state law and under the authority provided to her as a corrections officer at BCCF.

9.      Defendant, Christine Cueto (herein "Defendant Cueto"), is an adult person and resident of the Commonwealth of Pennsylvania with a business address at 1730 South Easton Road, Doylestown, Pennsylvania 18901. Defendant Cueto is a corrections officer employed by the Bucks County Correctional Facility and/or Bucks County.  At all times relevant hereto, was acting under color of state law and under the authority provided to her as a corrections officer at BCCF.

10.     Defendant, Jaqueline Torres (herein "Defendant Torres"), is an adult person and resident of the Commonwealth of Pennsylvania with a business address at 1730 South Easton Road, Doylestown, Pennsylvania 18901. Defendant Torres is a corrections officer employed by the Bucks County Correctional Facility and/or Bucks County.  At all times relevant hereto, Defendant Torres was acting under color of state law and under the authority provided to her as a corrections officer at BCCF.

11.     Defendant, C.O. Pagan Pagan, initially incorrectly spelled Pagone , (herein "Defendant Pagan Pagan"), is an adult person and resident of the Commonwealth of Pennsylvania with a business address at 1730 South Easton Road, Doylestown, Pennsylvania 18901. Defendant Pagan Pagan is a corrections officer employed by the Bucks County Correctional Facility and/or Bucks County.  At all times relevant hereto, was acting under color of state law and under the authority provided to her as a corrections officer at BCCF.  Defendant Pagan Pagan's first name is unknown at this time in the absence of discovery.

12.     Defendant, C.O. Hines (herein "Defendant Hines"), is an adult person and resident of the Commonwealth of Pennsylvania with a business address at 1730 South Easton Road, Doylestown, Pennsylvania 18901. Defendant Hines is a corrections officer employed by the Bucks County Correctional Facility and/or Bucks County.  At all times relevant hereto,

Defendant Hines was acting under color of state law and under the authority provided to them as a corrections officer at BCCF.  Defendant Hines's first name is unknown at this time in the absence of discovery.

13.     Defendant, C.O. Stires, initially incorrectly spelled Styers (herein "Defendant Stirers"), is an adult person and resident of the Commonwealth of Pennsylvania with a business address at 1730 South Easton Road, Doylestown, Pennsylvania 18901. Defendant Stires is a corrections officer employed by the Bucks County Correctional Facility and/or Bucks County.  At all times relevant hereto, Defendant Stires was acting under color of state law and under the authority provided to them as a corrections officer at BCCF.  Defendant Stires's first name is unknown at this time in the absence of discovery.

14.     Defendant, C.O. Murdoch, initially named as John Doe 1, (herein "Defendant Murdoch"), is an adult person and resident of the Commonwealth of Pennsylvania with a business address at 1730 South Easton Road, Doylestown, Pennsylvania 18901. Defendant Murdoch is a corrections officer employed by the Bucks County Correctional Facility and/or Bucks County.  At all times relevant hereto, was acting under color of state law and under the authority provided to them as a corrections officer at BCCF.  Defendant Murdoch's first name is unknown at this time in the absence of discovery.

15.     Defendant, Langston Mason, initially identified as John Doe 2, (herein "Defendant Mason"), is an adult person and resident of the Commonwealth of Pennsylvania with a business address at 1730 South Easton Road, Doylestown, Pennsylvania 18901. Defendant Mason is a corrections officer employed by the Bucks County Correctional Facility and/or Bucks County.  At all times relevant hereto, was acting under color of state law and under the authority provided to them as a corrections officer at BCCF.

16.     Defendant, C.O. G. Williams, initially identified as John Doe 3, (herein "Defendant G. Williams"), is an adult person and resident of the Commonwealth of Pennsylvania with a business address at 1730 South Easton Road, Doylestown, Pennsylvania 18901. Defendant C.O. G. Williams is a corrections officer employed by the Bucks County Correctional Facility and/or Bucks County.  At all times relevant hereto, was acting under color of state law and under the authority provided to them as a corrections officer at BCCF.  Defendant G. Williams first name is unknown at this time in the absence of discovery.

17.     Defendant, Sergeant Mander, initially identified as John Doe 4, (herein "Defendant Mander"), is an adult person and resident of the Commonwealth of Pennsylvania with a business address at 1730 South Easton Road, Doylestown, Pennsylvania 18901. Defendant Mander is a corrections officer employed by the Bucks County Correctional Facility and/or Bucks County.  At all times relevant hereto, was acting under color of state law and under the authority provided to them as a corrections officer at BCCF.  Defendant Sergeant Mander's first name is unknown at this time in the absence of discovery.

18.     Defendant, C.O. Nester, initially identified as John Doe 5, (herein "Defendant Nester"), is an adult person and resident of the Commonwealth of Pennsylvania with a business address at 1730 South Easton Road, Doylestown, Pennsylvania 18901. Defendant C.O. Nester is a corrections officer employed by the Bucks County Correctional Facility and/or Bucks County.  At all times relevant hereto, was acting under color of state law and under the authority provided to them as a corrections officer at BCCF.  Defendant Nester's first name is unknown at this time in the absence of discovery.

19.     Defendant, C.O. Duprey, initially identified as John Doe 6, (herein "Defendant Duprey"), is an adult person and resident of the Commonwealth of Pennsylvania with a business address at 1730 South Easton Road, Doylestown, Pennsylvania 18901. Defendant C.O. G. Williams is a corrections officer employed by the Bucks County Correctional Facility and/or Bucks County.  At all times relevant hereto, was acting under color of state law and under the authority provided to them as a corrections officer at BCCF.  Defendant G. Williams first name is unknown at this time in the absence of discovery.

20.     Defendant, C.O. Geibert, initially identified as John Doe 7, (herein "Defendant Geibert"), is an adult person and resident of the Commonwealth of Pennsylvania with a business address at 1730 South Easton Road, Doylestown, Pennsylvania 18901. Defendant C.O. Geibert is a corrections officer employed by the Bucks County Correctional Facility and/or Bucks County. At all times relevant hereto, was acting under color of state law and under the authority provided to them as a corrections officer at BCCF.  Defendant Geibert's first name is unknown at this time in the absence of discovery.

21.     Defendant, C.O. A. Cruz, initially identified as John Doe 8, (herein "Defendant A. Cruz"), is an adult person and resident of the Commonwealth of Pennsylvania with a business address at 1730 South Easton Road, Doylestown, Pennsylvania 18901. Defendant C.O. A. Cruz is a corrections officer employed by the Bucks County Correctional Facility and/or Bucks County. At all times relevant hereto, was acting under color of state law and under the authority provided to them as a corrections officer at BCCF.  Defendant A. Cruz's first name is unknown at this time in the absence of discovery.

22.     Defendant, C.O. Mime, initially identified as John Doe 9, (herein "Defendant Mime"), is an adult person and resident of the Commonwealth of Pennsylvania with a business address at 1730 South Easton Road, Doylestown, Pennsylvania 18901. Defendant C.O. Mime is a corrections officer employed by the Bucks County Correctional Facility and/or Bucks County.  At all times relevant hereto, was acting under color of state law and under the authority provided to them as a corrections officer at BCCF.  Defendant Mime's first name is unknown at this time in the absence of discovery.

23.     Defendant, C.O. McIntyre, initially identified as John Doe 10, (herein "Defendant McIntyre"), is an adult person and resident of the Commonwealth of Pennsylvania with a business address at 1730 South Easton Road, Doylestown, Pennsylvania 18901. Defendant C.O. McIntyre is a corrections officer employed by the Bucks County Correctional Facility and/or Bucks County.  At all times relevant hereto, was acting under color of state law and under the authority provided to them as a corrections officer at BCCF.  Defendant McIntyre's first name is unknown at this time in the absence of discovery.

24.     Defendant, C.O. Devlin, initially identified as John Doe 11, (herein "Defendant Devlin"), is an adult person and resident of the Commonwealth of Pennsylvania with a business address at 1730 South Easton Road, Doylestown, Pennsylvania 18901. Defendant C.O. Devlin is a corrections officer employed by the Bucks County Correctional Facility and/or Bucks County.  At all times relevant hereto, was acting under color of state law and under the authority provided to them as a corrections officer at BCCF.  Defendant Devlin's first name is unknown at this time in the absence of discovery.

25.     Defendant, C.O. South, initially identified as John Doe 12, (herein "Defendant South"), is an adult person and resident of the Commonwealth of Pennsylvania with a business address at 1730 South Easton Road, Doylestown, Pennsylvania 18901. Defendant C.O. South is a corrections officer employed by the Bucks County Correctional Facility and/or Bucks County.  At all times relevant hereto, was acting under color of state law and under the authority provided to them as a corrections officer at BCCF.  Defendant South's first name is unknown at this time in the absence of discovery.

26.     Defendant, Sergeant Lynn, initially identified as John Doe 13, (herein "Defendant Lynn"), is an adult person and resident of the Commonwealth of Pennsylvania with a business address at 1730 South Easton Road, Doylestown, Pennsylvania 18901. Defendant C.O. Lynn is a corrections officer employed by the Bucks County Correctional Facility and/or Bucks County.  At all times relevant hereto, was acting under color of state law and under the authority provided to them as a corrections officer at BCCF.  Defendant Lynn's first name is unknown at this time in the absence of discovery.

27.     Defendant, C.O. Canterman, whose handwritten signature is written as _____ _Canterman_, initially identified as John Doe 14, (herein "Defendant G. Williams"), is an adult person and resident of the Commonwealth of Pennsylvania with a business address at 1730 South Easton Road, Doylestown, Pennsylvania 18901. Defendant Canterman is a corrections officer employed by the Bucks County Correctional Facility and/or Bucks County.  At all times relevant hereto, was acting under color of state law and under the authority provided to them as a corrections officer at BCCF.  Defendant Canterman's first name is unknown at this time in the absence of discovery.

28.     Defendant, C.O. Sherrod, initially identified as John Doe 15, (herein "Defendant Sherrod"), is an adult person and resident of the Commonwealth of Pennsylvania with a business address at 1730 South Easton Road, Doylestown, Pennsylvania 18901. Defendant C.O. Sherrod is a corrections officer employed by the Bucks County Correctional Facility and/or Bucks County. At all times relevant hereto, was acting under color of state law and under the authority provided to them as a corrections officer at BCCF.  Defendant Sherrod's first name is unknown at this time in the absence of discovery.

29.     Defendant, C.O. Hughes, initially identified as John Doe 16, (herein "Defendant Hughes"), is an adult person and resident of the Commonwealth of Pennsylvania with a business address at 1730 South Easton Road, Doylestown, Pennsylvania 18901. Defendant C.O. Hughes is a corrections officer employed by the Bucks County Correctional Facility and/or Bucks County. At all times relevant hereto, was acting under color of state law and under the authority provided to them as a corrections officer at BCCF.  Defendant Hughes' first name is unknown at this time in the absence of discovery.

30.     Defendant, C.O. Miles, initially identified as John Doe 17, (herein "Defendant Miles"), is an adult person and resident of the Commonwealth of Pennsylvania with a business address at 1730 South Easton Road, Doylestown, Pennsylvania 18901. Defendant C.O. Miles is a corrections officer employed by the Bucks County Correctional Facility and/or Bucks County.  At all times relevant hereto, was acting under color of state law and under the authority provided to them as a corrections officer at BCCF.  Defendant Miles' first name is unknown at this time in the absence of discovery.

31.     Defendant, C.O. Heilman, initially identified as John Doe 18, (herein "Defendant Heilman"), is an adult person and resident of the Commonwealth of Pennsylvania with a business address at 1730 South Easton Road, Doylestown, Pennsylvania 18901. Defendant C.O. Heilman is a corrections officer employed by the Bucks County Correctional Facility and/or Bucks County.  At all times relevant hereto, was acting under color of state law and under the authority provided to them as a corrections officer at BCCF.  Defendant Heilman's first name is unknown at this time in the absence of discovery.

32.     Defendant, Sergeant Gill, initially identified as John Doe 19, (herein "Defendant Gill"), is an adult person and resident of the Commonwealth of Pennsylvania with a business address at 1730 South Easton Road, Doylestown, Pennsylvania 18901. Defendant C.O. Gill is a corrections officer employed by the Bucks County Correctional Facility and/or Bucks County.  At all times relevant hereto, was acting under color of state law and under the authority provided to them as a corrections officer at BCCF.  Defendant Gill's first name is unknown at this time in the absence of discovery.

33.     Defendant, Lt. Morris, initially identified as John Doe 20, (herein "Defendant Morris"), is an adult person and resident of the Commonwealth of Pennsylvania with a business address at 1730 South Easton Road, Doylestown, Pennsylvania 18901. Defendant Morris is a supervisor employed by the Bucks County Correctional Facility and/or Bucks County.  At all times relevant hereto, was acting under color of state law and under the authority provided to him as a corrections officer at BCCF.  Defendant Lt. Morris' first name is unknown at this time in the absence of discovery.

34.     At all times material hereto, Defendant, Bucks County, owned, operated, maintained, was responsible for, and/or otherwise controlled the Bucks County Correctional Facility.  The BCCF is not independent municipal entity.

## JURISDICTION AND VENUE

35.     The Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331, as Plaintiffs' claims arise under the United States Constitution and 42 U.S.C. § 1983.

36.     Venue is proper in the Eastern District of Pennsylvania pursuant to 28 U.S.C. §1391(b) because one or more of the Defendants reside, in this district and all Defendants are residents of the Commonwealth of Pennsylvania and a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

## OPERATIVE FACTS

37.     The preceding paragraphs and allegations stated above are incorporated by reference as though fully set forth herein.

38.     Plaintiff Kimberly Stringer was a pre-trial detainee at BCCF at all relevant times herein. Ms. Stringer was continuously incarcerated between the dates of April 14, 2020 and June 17, 2020 when she was transferred to the State Mental Hospital in Norristown.

39.     Prior to Kimberly Stringer's incarceration she had struggled with mental illness including bipolar disorder.

40.     Prior to Kimberly Stringer's incarceration, policymakers in Bucks County were aware that individuals suffering from mental health disorders would frequently come in contact with the criminal justice system ad specifically BCCF.

41.     Prior to Kimberly Stringer's incarceration, policymakers in Bucks County were also aware that individuals with mental illness would have a reduced capacity to follow directives from guards at the BCCF.

42.     Prior to Kimberly Stringer's incarceration, policymakers in Bucks County were aware that uses of force on inmates with mental illness could be detrimental to their physical and mental health.  Moreover, policymakers were aware that uses of force on mentally ill individuals for not complying with directives was unreasonable, malicious, and sadistic when those individuals were incapable of complying due to their mental illness.

43.     In the beginning of 2020, Kimberly Stringer's mental health worsened.  She developed worsening paranoia as a symptom of her mental illness.

44.     On or about Saturday April 14, 2020, Kimberly Stringer was arrested by the Falls Township police for striking and threatening her neighbor.  This conduct was a direct result of the paranoia induced by Kimberly Stringer's mental illness.

45.     Following her arrest, Kimberly Stringer was held at BCCF as pretrial detainee on $50,000 bail awaiting trial.

46.     While at BCCF, Kimberly Stringer's mental illness worsened.

47.     During Kimberly Stringer's time incarcerated at the BCCF, she was almost always naked despite being in full view of male and female corrections officers and housed on units with male inmates.

48.     Kimberly Stringer was housed for the majority of her incarceration at BCCF on "H" Block.

49.     While on "H" Block, Defendant Officers Kovach, Wylie, Forman, Biemuller, Cueto, Torres, Pagan , Hines, Stires, Murdoch, Mason, Mander, Nester, Duprey, Geibert, A. Cruz, Mime, McIntyre, G. Williams G. Williams, Devlin, South, Lynn, Canterman, Sherrod, Hughes, Miles,  Heilman and/or John Doe 20 engaged in unreasonable and excessive uses of force on Kimberly  Stringer, including using O.C. Spray on her and forcibly removing her form her cell and placing her in a restraint chair.

50.     The excessive uses of force while Kimberly Stringer was housed on the "H" Block were unreasonable and were instituted because of Kimberly Stringer's mental illness and the symptoms of that illness.   At no time did Ms. Stringer pose a danger to guards involved in the O.C. spraying and or any other inmates or guards at BCCF.

51.     On or about May 6, 2020, at about 10:10 p.m. Defendant Officers Lynn, Canterman, Sherrod, Hughes, and Miles and/or John Doe 20 were engaged in an unreasonable and excessive use of force on Kimberly  Stringer.  Officers entered Ms. Stringer's cell and handcuffed Kimberly Stringer and placed her in a restraint chair for an undetermined period of time.

52.     The May 6 use of force was unreasonable and was instituted because of Kimberly Stringer's mental illness and the symptoms of that illness.   At no time did Ms. Stringer pose a danger to guards involved in the restraining of Kimberly Stringer or any other inmates or guards at BCCF.

53.     The excessive use of force on May 6 at or about 10:10 p.m., was approved and authorized by the supervisors at the jail, including Sergeant Lynn, Sergeant Mason, Sergeant Kovach, Sergeant Wylie, and/or John Doe 20, despite knowing that Kimberly Stringer was not able to comply with directives from guards because of her mental illness.

54.     On or about May 10, 2020, at 10:10 a.m. Defendant Officers Forman, Stires, G. Williams, Murdoch, Mander, Mason, and/or John Doe 20 were engaged in an unreasonable and excessive use of force on Kimberly Stringer.  Officers entered Ms. Stringer's cell and handcuffed Kimberly Stringer and placed her in a restraint chair for an undetermined period of time.

55.      The May 10 10:10 a.m. use of force was unreasonable and was instituted because of Kimberly Stringer's mental illness and the symptoms of that illness.    At no time did Ms. Stringer pose a danger to guards involved in the restraining of Kimberly Stringer or any other inmates or guards at BCCF.

56.     The excessive use of force on May 10 at or about 10:10 a.m., was approved and authorized by the supervisors at the jail, including Sergeant Lt. Morris, Lynn, Sergeant Mason, Sergeant Kovach, Sergeant Wylie, and/or John Doe 20, despite knowing that Kimberly Stringer was not able to comply with directives from guards because of her mental illness.

57.     On or about May 10, 2020, at or about 12:25 p.m. Defendant Officers Pagan, Forman, Mander, Mason, Nester, Duprey and/or John Doe 20 were engaged in an unreasonable and excessive use of force on Kimberly Stringer.  Officers again entered Ms. Stringer's cell and handcuffed Kimberly Stringer and placed her back in a restraint chair for an undetermined period of time.

58.     The May 6 12:25 p.m. use of force was unreasonable and was instituted because of Kimberly Stringer's mental illness and the symptoms of that illness.   At no time did Ms. Stringer pose a danger to guards involved in the restraining of Kimberly Stringer or any other inmates or guards at BCCF.

59.     Lt. Morris directed that Kimberly Stringer be placed back in the restraint chair despite that she was mentally ill, and to extent she had not complied with directives, was not able to comply with directives from guards because of her mental illness.

60.     The excessive use of force on May 10 at or about 12:25 p.m., was approved and authorized by the supervisors at the jail, including Lt. Morris, Sergeant Lynn, Sergeant Mason, Sergeant Kovach, Sergeant Wylie, and/or John Doe 20, despite knowing that Kimberly Stringer was not able to comply with directives from guards because of her mental illness.

61.     On or about May 11, 2020, Defendant Officers Kovach, Wylie, Biemuller, Torres, A. Cruz, Geibert, Mime and/or John Doe 20 were engaged in an unreasonable and excessive use of force on Kimberly Stringer.  The officers used Oleoresin Capsicum ("O.C. Spray"), commonly referred to as "pepper spray" and/or Mace on Ms. Stringer.  O.C. Spray causes a burning sensation in the eyes, nose, mouth, and throat and but can also cause difficulty breathing and temporary blindness when the eyes swell shut.

62.     In addition to utilizing O.C. Spray, Officers entered Ms. Stringer's cell and handcuffed Kimberly Stringer and placed her in a restraint chair for an undetermined period of time.

63.     The May 11 10:10 use of force was unreasonable and was instituted because of Kimberly Stringer's mental illness and the symptoms of that illness.   At no time did Ms. Stringer pose a danger to guards involved in the restraining of Kimberly Stringer or any other inmates or guards at BCCF.

64.     The excessive use of force on May 11, was considered a "planned use of force." As a "planned use of force" the supervisors at the jail, including Sergeant Kovach, Sergeant Mason, Sergeant Wylie, and/or John Doe 20, authorized the use of force despite knowing that

Kim Stringer was not able to comply with directives from guards because of her mental illness.

65.     On or about May 20, 2020, Defendant Officers Kovach, Wylie, Torres, Cueto, McIntyre, Devlin, South, and/or John Doe 20 were engaged in an unreasonable and excessive use of force on Kimberly Stringer.  Officers entered Ms. Stringer's cell and again utilized O.C. Spray on Ms. Stringer despite it being evidence that she was not responding to directives from guards because of her mental illness.

66.     In addition to utilizing O.C. Spray, the guards handcuffed Kimberly Stringer and placed her in a restraint chair.

67.     The May 20 use of force was unreasonable and was instituted because of Kimberly Stringer's mental illness and the symptoms of that illness.   At no time did Ms. Stringer pose a danger to guards involved in the pepper spraying and restraining of Kimberly Stringer or any other inmates or guards at BCCF.

68.     The excessive use of force on May 20, was considered a "planned use of force." As a "planned use of force" the supervisors at the jail, including Sergeant Kovach, Sergeant Mason, Sergeant Wylie, and/or John Doe 20, authorized the use of force despite knowing that Kimberly Stringer was not able to comply with directives from guards because of her mental illness.

69.     On or about May 29, 2020, Defendant Officers Pagan, Heilman, and Gill and/or John Doe 20, were engaged in an unreasonable and excessive use of force on Kimberly Stringer. Officers entered Ms. Stringer's cell and physically restrained her for the purpose of involuntarily medicating her.

70.     At some point while at BCCF, Kimberly Stringer was moved from a cell on "H" block to a cell in Women's Special Housing Unit for Mental Health Inmates known as "the Farm."

71.     While on the Farm, Defendant Officers Kovach, Wylie, Forman, Biemuller, Cueto, Torres, Pagan , Hines, Stires, Murdoch, Mason, Mander, Nester, Duprey, Geibert, A. Cruz, Mime, McIntyre, G. Williams G. Williams, Devlin, South, Lynn, Canterman, Sherrod, Hughes, Miles,  Heilman and/or John Doe 20, continued to engage in an unreasonable and excessive uses of force on Kimberly  Stringer, including using O.C. Spray  on her and forcibly removing her form her cell and placing her in a restraint chair.

72.     The excessive uses of force while Kimberly Stringer was housed on the Women's Special Housing Unit for Mental Health Inmates were unreasonable and were instituted because of Kimberly Stringer's mental illness and the symptoms of that illness.   At no time did Ms. Stringer pose a danger to guards involved in the pepper spraying and restraining of Kimberly Stringer or any other inmates or guards at BCCF.

73.     Defendant Bucks County determined that all the excessive and unconstitutional uses of force against Ms. Stringer were consistent with its policies and procedures authorizing the use of O.C. Spray and restraints of prisoners.

74.      After each incidence of excessive force utilized on Kimberly Stringer, her mental health deteriorated.

75.     Inmates who had witnessed the excessive uses of force on Kimberly Stringer contacted Plaintiffs to tell them about what their daughter was experiencing.

76.     On or about June 12, 2020, Plaintiff Martha Stringer emailed Bucks County Commissioner Diane Ellis-Marseglia, a policy maker at Bucks County, to ask about reports that O.C. Spray had been used on her mentally ill daughter.

77.     On or about June 13, was told by Commissioner Marseglia, that O.C. Spray was not used on Kimberly Stringer.  This was inaccurate.

78.     On or about June 15, 2020, an article was published based on firsthand accounts of other inmates that witnesses the excessive uses of force on Kimberly Stringer.

79.     On June 17, 2020, Kimberly Stringer was transferred from BCCF to Norristown State Mental Hospital.

80.     Upon arrival at the Norristown State Mental Hospital, Kimberly Stringer was in a cationic state, unable to verbally communicate and nearly entirely unresponsive.

81.      As a direct and proximate result of Defendants' unreasonable, unjustifiable, and unconstitutional conduct, Kimberly Stringer was caused to suffer the following:

     a.   Physical and mental pain and suffering;

     b.   Fear, fright and terror;

     c.   Mental anguish;

     d.   Pain and suffering of being repeatedly sprayed with O.C. Spray and physically restrained;

     e.   Worsening mental and physical illness, including potential brain damage and seizure disorder;

     f.   Temporary unresponsiveness and loss of capacity to speak;

     g.   Worsened prognosis for mental health treatment;

    h.   Sequalae of repeated use of O.C. Spray including potential brain damage and seizure disorder;

    i.    Embarrassment;

    j.    Disfigurement; and,

    k.   Loss of life's pleasures.

## <u>COUNT I – CIVIL RIGHTS 42 U.S.C. § 1983</u>

**Plaintiffs Martha and Paul Stringer, as Attorneys-in-Fact for Kimberly Stringer v. Defendants Kovach, Wylie, Forman, Biemuller, Cueto, Torres, Pagan, Hines, Stires, Murdoch, Mason, Mander, Nester, Duprey, Geibert, A. Cruz, Mime, McIntyre, G. Williams, Devlin, South, Lynn, Canterman, Sherrod, Hughes, Miles, Heilman and/or John Doe 20**

82.    The preceding paragraphs and allegations are incorporated by reference as though fully set forth herein.

83.    Defendants in all of their actions and inactions described herein with regard to Kimberly Stringer were all acting under the color of state law.

84.    The force utilized by Defendants against Kimberly Stringer during her incarceration a the BCCF, as described herein, was excessive and in violation of Kimberly Stringer's due process rights under the fourteenth amendment to the United States Constitution and her rights to be free from cruel and unusual punishment under the Eighth Amendment to the United States Constitution.

85.    The Defendants uses of force against Kimberly Stringer were objectively unreasonable under the circumstances.

86.    Defendants engaged in the excessive uses of forces described herein either intentionally, with deliberate indifference or conscious disregard to the rights of Kimberly Stringer.

87.     The excessive uses of force by Defendants against Kimberly Stringer, who was at all times mentally ill and not a danger to guards or other inmates, were malicious and sadistic.

88.     Defendants were aware that Kimberly Stringer had a clearly established constitutional right as a pretrial detainee to be free from excessive uses of force that were objectively unreasonable.

89.     Defendants' conduct, as set forth above, demonstrates that the harm caused to Kimberly Stringer was a foreseeable and fairly direct result of Defendants' conduct.

90.     Defendants' conduct, as set forth above, demonstrates that Defendants acted with deliberate indifference and conscious disregard of the great risk of serious harm to Kimberly Stringer.

91.     Defendants' conduct, as set forth herein, violated Kimberly Stringer's constitutional rights, as guaranteed by the United States and Pennsylvania Constitutions, and remediable under 42 U.S.C. § 1983.

92.     As a direct and proximate result of Defendants' unreasonable, unjustifiable, and unconstitutional conduct, Kimberly Stringer was caused to suffer the injuries described herein.

**WHEREFORE**, Plaintiffs demand judgment against Defendant Kovach, Wylie, Forman, Biemuller, Cueto, Torres, Pagan, Hines, Stires, Murdoch, Mason, Mander, Nester, Duprey, Geibert, A. Cruz, Mime, McIntyre, G. Williams, Devlin, South, Lynn, Canterman, Sherrod, Hughes, Miles,  Heilman and/or John Doe 20, and damages provided under the Pennsylvania law, jointly and severally, together with attorney fees and costs, and pre- and post-judgment interest and any all relief available pursuant to 42 U.S.C. § 1983.

## COUNT II – CIVIL RIGHTS- 42 U.S.C. § 1983- SUPERVISORY LIABILITY

**Plaintiffs Martha and Paul Stringer, as Attorneys-in-Fact for Kimberly Stringer v. Defendants Morris, Kovach, Mason, Lynn, Wylie, and John Doe 20**

93.     The preceding paragraphs and allegations are incorporated by reference as though fully set forth herein.

94.     Defendants Morris, Kovach, Mason, Lynn, Wylie, and John Does 20, were in supervisory positions at BCCF with authority to plan, direct, ratify, and terminate uses of force on inmates at BCCF including Kimberly Stringer.

95.     Defendants Morris, Kovach, Mason, Lynn, Wylie, and John Does 20, were aware that Kimberly Stringer suffered from severe mental illness and that she was incapable of understanding and complying with officer directives.

96.     Defendants Morris, Kovach, Mason, Lynn, Wylie, and John Does 20, had knowledge of the excessive and unconstitutional uses of force on Kimberly Stringer described herein in violation of Kimberly Stringer's rights under the Fourteenth and Eighth Amendments to the United States Constitution and planned, approved, directed, and participated in those uses of force.

97.     Defendants Morris, Kovach, Mason, Lynn, Wylie, and John Does 20, having knowledge that subordinates were engaging in excessive and unconstitutional uses of force on Kimberly Stringer as described herein and further acquiesced to those unconstitutional uses of force.

98.     The conduct of Defendants Morris, Kovach, Mason, Lynn, Wylie, and John Does 20, in planning, approving, directing, and participating and acquiescing to the excessive uses of force on Kimberly Stringer is a violation of her constitutional rights, as guaranteed by the United

States and Pennsylvania Constitutions, and remediable under 42 U.S.C. § 1983.

99.    As a direct and proximate result Defendants Morris, Kovach, Mason, Lynn, Wylie, and John Does 20, unreasonable, unjustifiable, and unconstitutional conduct, Kimberly Stringer was caused to suffer the injuries described herein.

**WHEREFORE**, Plaintiffs demand judgment against Defendant Morris, Kovach, Mason, Lynn, Wylie, and John Does 20, and damages provided under the Pennsylvania law, jointly and severally, together with attorney fees and costs, and pre- and post-judgment interest and any all relief available pursuant to 42 U.S.C. § 1983.

## COUNT III– CIVIL RIGHTS- MUNICIPAL LIABILITY

### Plaintiffs Martha and Paul Stringer, as Attorneys-in-Fact for Kimberly Stringer v. Defendant Bucks County

100.    The preceding paragraphs and allegations are incorporated by reference as though fully set forth herein.

101.    Defendants' conduct, as set forth above, evinces a violation of Kimberly Stringer's constitutional rights, including those guaranteed by the Fourteenth Amendment to the United States' Constitution.

102.    The violations of the Kimberly Stringer's constitutional rights as described herein was not isolated or rogue occurrence.  Instead, these violations occurred because Defendant Bucks County maintained policies and procedures that permitted the use of excessive force on inmates with severe mental illness including the use of O.C. Spray and restraint chairs.  For years leading up to and through the time of Kimberly Stringer's incarceration, a significant number of individuals at BCCF suffered from severe mental illness. At times more than half of the inmates were receiving mental health treatment.  Bucks County was aware individuals with severe mental illness may not be capable of comprehending facility rules and directives of corrections officers.

Bucks County also knew the most frequent justification of uses of force on inmates at the BCCF was for their "noncompliance."   Nonetheless, the policies, including the Use of Force Policy in place at BCCF directed the use of force, including Pepper Spray and restraints, to enforce compliance on mentally ill inmates.  As a result of these policies, and training consistent with them, there were disproportionate uses of force on inmates housed on the mental health units prior to Kimberly Stringer's incarceration.  Moreover, there were far greater uses of O.C. Spray and restraints chairs at BCCF than at similar sized county jails in Eastern Pennsylvania.  Moreover, there were specific instances of guards at BCCF using restraint chairs and O.C. Spray on other severely mentally ill inmates in 2020 leading up to uses of a force on Kimberly Stringer.  Bucks County further confirmed that its policies and practices were a moving force behind the constitutional violations of Kimberly Stringer when the County reviewed the uses of force on Ms. Stringer and concluded they were consistent with its approved practices.

103.    Individuals with serious mental illness are overrepresented in county jails.  The Department of Justice has reported that more 1.25 million individuals with serious mental illness are incarcerated in jails and prisons in the United States, with more than 60% of individuals incarcerated in local jails reporting an impairment due to a mental health problem within the twelve months prior to incarceration.

104.    Consistent with this national trend, at all times relevant hereto, a significant number of inmates at BCCF struggled with mental illness. As of January 2019, Bucks County reported to the Pennsylvania Department of Corrections that is had 570 inmates on the Mental Health Caseload and 374 inmates at the facility were prescribed psychotropic medications. [1]

---

[1] The Bed Capacity reported by the Bucks County Department of Corrections in 2020 was 854.

105.    As of January of 2020, a few months prior to Kimberly Stringer's incarceration, Bucks County reported to the Pennsylvania Department of Corrections that is had 789 inmates on the Mental Health Caseload and 339 inmates at the facility were prescribed psychotropic medications.

106.    The Bucks County Department of Corrections ("Bucks County DOC") was aware of or should have been aware that inmates with mental health issues would be more likely to fail to comply with facility rules.  A study conducted by the United States Department of Justice found that incarcerated people "who had a mental health problem were twice as likely as those without to have been charged with facility rule violations (19% compared to 9%)" and those "in local jails who had a mental health problem were also four times as likely as those without to have been charged with a physical or verbal assault on correctional staff or another inmate (8% compared to 2%)." Doris J. James & Lauren E. Glaze, *Mental Health Problems of Prison and Jail Inmates* 10 (U.S. Dep't of Justice, 2006).

107.    At all times relevant hereto, the Bucks County DOC maintained a Use of Force Policy, promulgated by the Bucks County Prison Administration and Operations Department, and approved by the Director of Corrections.  Specifically, the County maintained a Use of a Force Policy revised in 2020 and approved by then Director of Corrections, Christopher Pirolli.

108.    Under the Bucks County DOC Use of Force Policy, uses of force on an inmate are permitted for failure to comply with directives of the officers.  The Use of Force Policy allows for the sequential escalation of force against an inmate to counter their "noncompliant behavior." This escalation is applied to "all inmates and residents" regardless of their mental capacity to comply with directives.

109.    Based on reports made to the Bucks County Prison Oversight Board most of the uses of force at the BCCF are a result of "Non-compliance."

110.     The Bucks County DOC Use of Force Policy does not provide for any consideration of the mental health of an inmate, whether the inmate can understand the request for compliance, and whether the use of force on an inmate with severe mental illness will cause serious harm and exacerbation of their mental illness.

111.     As an example, the Bucks County DOC Use of Force Policy specifically authorizes the use of O.C. Spray in situations where an inmate fails to comply with a direct order. The Use of Force Policy further specifically authorizes the repeated use of O.C. Spray to the achieve "compliance."

112.     The Use of Force Continuum adopted as part of the Bucks County DOC's Use of Force Policy and used to train corrections officers on appropriate uses of force, recommends the use of the O.C. Spray when an inmate fails to move in response to the officer's verbal direction. The Use of Force Continuum and Bucks County DOC's Use of Force Policy recommends the use of O.C. Spray regardless of whether the inmate is unable to understand this directive as a result of a mental illness.

113.     The Bucks County DOC Use of Force Policy does not provide for any consideration of the mental health of an inmate in authorizing the use of O.C. Spray to achieve compliance. Specifically, the policy fails to consider whether the inmate's mental illness prevents them from understanding "direct orders" and requests for compliance in determining if O.C. Spray is used.  The policy instead directs correctional officers that "multiple applications of the [O.C. Spray] may be used if the initial desired effect falls short of total compliance."

114.     The Bucks County DOC Use of Force Policy also provides for the use of an "Offender Restraint Seat," a restraint chair.  The Use of Force Policy provides that security staff may bind inmates in a restraint chair without any prior medical or mental health approval.  The

Use of Force policy does not provide for any consideration of the mental health of inmate in authorizing the use of the restraint chair.

115.    The Use of Force Policy provides that inmates may be held in restraints for up to 24 hours before, "an inmate will be considered sufficiently disturbed to consider emergency psychiatric hospitalization."

116.    The dangers of placing mentally ill inmates in restraint chairs is well known.  The United Nations Committee Against Torture recommended that the United States discontinue the use of restraint chairs as methods of restraining inmates, as their use "almost invariably led to breaches of the [United Nations Convention on Torture and Other Cruel, Inhuman or Degrading Treatment]."  Restraint chairs were associated with twenty deaths in county jails from 2014-2020.  Moreover, the use of restraint chairs has been associated with exacerbation of mental illness symptoms, including depression, agitation, and anxiety.

117.    Defendant Bucks County failed to properly train, and/or failed to have a proper policy regarding training correctional officers on use of force, use of O.C. Spray, and use of restraint chairs on pretrial detainees with severe mental illness.   Instead, the training instructed officers to utilize excessive force on mentally ill inmates, like Kimberly Stringer, regardless of whether they were able to comply with officers' directives.

118.    Defendant Bucks County trained its officers to use force on inmates consistent with the Use of Force Policy and Use of Force Continuum described herein.  The Bucks County DOC Use of Force Policy, provided that training consistent with the policy be given for "[a]ll security staff."  This training, among other things instructed officers to use force to achieve compliance and specifically to Pepper Spray inmates to achieve "total compliance" and restrain inmates for non-compliances regardless of the whether an inmate's mental illness prevented them

from understanding directives and complying.   This resulted in a pattern of constitutional violations of excessive force on inmates with severe mental illness and ultimately the excessive force used on Kimberly Stringer.

119.    Following Kimberly Stringer's incarceration, Defendant Bucks County determined that all of the unconstitutional uses of excessive force on Kimberly Stringer described herein were performed by its officers consistent with BCCF's policies and procedures and training, including the Bucks County Use of Force Policy.  This is because BCCF's policies and procedures, including the Bucks County Use of Force Policy as written and applied at BCCF result in and justify excessive uses of force against mentally ill inmates.

120.    Prior to Kimberly Stringer's incarceration there was a pattern and practice of utilizing excessive force on mentally ill inmates, including use of O.C. Spray and restraint chairs when inmates were not capable of complying with guards' directives due to mental illness.

121.    Bucks County Policy segregates inmates, like Kimberly Stringer, on special mental health units.   There is a pattern and practice of disproportionately utilizing force on the inmates on these Mental Health Units.

122.    At all times relevant hereto, the Bucks County Department of Corrections maintained a Mental Health Unit Policy, promulgated by the Bucks County Correctional Facility Operations Department, and approved by the Director of Corrections.  Specifically, the County maintained a Mental Health Unit Policy revised in 2015 under the authority of the then Director of Corrections William Plantier and reviewed in 2017 and 2018 under the authority of then Director of Corrections Christopher Pirolli.

123.    The Bucks County DOC Mental Health Unit Policy provided that inmates with significant behavioral issues from a mental health condition that cannot be housed on a general

population unit should be housed on the self-contained Mental Health Unit ("MHU").  The "disruptive and/or unmanageable behaviors" that warrant housing on the Mental Health Unit include exhibiting extreme withdrawal and being isolated and non-communicative.

124.    The Bucks County DOC Mental Health Unit Policy does not provide any direction or limitation on the use of force on inmates already known to be severely mentally ill by virtue of being housing on the MHU.  Instead, Bucks County policy directs the same use of force, including O.C. Spray and restraint chairs for "noncompliance" on the inmates on the mental health units, despite the clear acknowledgement that these inmates' ability to communicate and comply are impaired.

125.    Despite the Bucks County DOC recognizing that the inmates on the MHU are likely to have severe mental illness, in 2019 and 2020 prior to and during Ms. Stringer's incarceration, Bucks County Correctional Facility authorized a greater proportion of uses of force, and a greater proportion of restraint chair and O.C. Spray use on the inmates on the MHU than other housing units at BCCF.  The County had a pattern of utilizing force against severely mentally inmates more frequently than those without severe mental illness.

126.    Moreover, Bucks County Department of Corrections engaged in uses of force on inmates in greater frequency than similarly sized County correctional facilities in the Eastern District of Pennsylvania, and particularly uses of restraint chairs and O.C. Spray.  For example, in the 2019, BCCF reported 133 uses of force involving binding an inmate to a restraint chair and 69 uses of chemical agents on inmates.  In comparison, in 2019 Lehigh County, which reported essentially the same daily inmate population, reported less than half as many uses of a force on inmates and specifically less than half as many uses of restraints chairs (17) and chemical agents (14) on inmates.  Chester County, which housed more inmates than Bucks County utilized a

restraint chair one third of the number of times as Bucks County in 2019 (11).[2]

127.     Bucks County Department of Corrections engaged in uses of force on inmates in far greater frequency than in much larger correctional facilities in the Eastern District of Pennsylvania.  In 2019, Bucks County Correctional Facility reported significantly more uses of force than Montgomery County Correctional Facility despite having only half the daily average population of inmates.  Specifically, despite having twice as many inmates in 2019, the Montgomery County Correctional Facility reported far fewer uses of restraint chairs (85) and less than one third the number of instances of O.C. Spray use (23).

128.     In the first half of 2020, including the time that Kimberly Stringer was incarcerated at the BCCF, Bucks County continued its pattern of utilizing force on mentally ill inmates, and particularly utilizing restraint chairs and O.C. spray.

129.     Again, during the first half of 2020, Bucks County utilized force on its inmates more than other similarly sized jails.  Bucks County reported 30 instances of binding inmates to restraint chairs and 33 instances of utilizing O.C. Spray on inmates.  Again, this was significantly more than similarly sized (and even larger) correctional facilities in the Eastern District of Pennsylvania.  In comparison, in the first half of 2020, Chester County and Lehigh County reported far fewer uses of force than Bucks County.  Chester County reported only one sixth the number of uses of a restraint chair (5) despite housing a similar number of prisoners.  Lehigh County reported less than half as many uses of O.C. Spray on inmates (12) and fewer instances of binding inmates to restraint chairs (20).

130.     A significant portion of the uses of force in the first half of 2020, including the time Kimberly Stringer was incarcerated at BCCF, were on inmates who were mentally ill.  Bucks County documented 44 uses of force on inmates from April to June of 2020. Sixteen (16)

---

[2] The Chester County Prison does not utilize OC Spray on inmates.

of these 44 uses of force were reportedly on inmates with documented mental health diagnoses or undergoing a mental health crisis.

131.     During this time there are specific instances reported of Bucks County utilizing restraint chairs and O.C. Spray on other mentally ill inmates.  For example, one mentally ill inmate reportedly failed to comply with a directive to hold out his hands to be handcuffed.  When he refused to comply, he was O.C. sprayed.

132.     Another inmate who was undergoing a mental health crisis was placed in a restraint chair after he had reportedly tried to harm himself.

133.     A third inmate in the first half of 2020 was undergoing a mental health crisis was O.C. sprayed and restrained for breaking a toilet.

134.     The paragraphs above support that Defendant Bucks County's policies, procedures, and training resulted in the unconstitutional use of force on Kimberly Stringer. Defendant Bucks County has obscured the full extent of the pattern and practice of excess uses of force and specifically restraint chairs and O.C. Spray on mentally ill inmates.  Bucks County DOC's Use of Force Policy provides that all use of force incidents were supposed to be investigated and finding were supposed to be aggregated and analyzed.  Despite this, however, Bucks County does not track how many of its uses of force are specifically carried out on mentally ill inmates.  Further, the Bucks County DOC does not report to the Pennsylvania Department of Corrections the number of uses of force and the specifically uses of restraint chairs and O.C. Spray are carried out on mentally ill inmates.  Bucks County has also refused public Right to Know requests for greater specificity regarding uses of force at the BCCF.

135.     Defendant Bucks County maintained the above policies, procedures, and practices that it knew authorized the excessive use of force on mentally ill inmates in violation of their

constitutional rights. Despite this, Defendant Bucks County failed to amend, revise, or replace these policies, procedures, and practices with appropriate policies, procedures, and practices thereby depriving Kimberly Stringer of her constitutional rights.

136.    The above-referenced actions are outrageous, egregious, and conscience-shocking, and rise to a level of intention to cause harm.

137.    Defendant Bucks County's policies, procedures, and training discussed herein were a moving force behind the disproportionate uses of force, including O.C. Spray and restraint chairs on mentally ill inmates and ultimately the violations of Kimberly Stringer's constitutional rights.

138.    As a direct and proximate result of Defendant's unreasonable, unjustifiable, and unconstitutional conduct, Kimberly Stringer was caused to suffer severe injuries as discussed herein.

**WHEREFORE**, Plaintiffs demand judgment against Defendant Bucks County and damages provided under the Pennsylvania law, jointly and severally, together with attorney fees and costs, and pre- and post-judgment interest and any all relief available pursuant to 42 U.S.C. § 1983.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury as to all counts and all issues raised by this Complaint.

Respectfully submitted,

**KLINE & SPECTER**

BY:  *David K. Inscho*

DAVID K. INSCHO, ESQUIRE
Attorney ID: 90267
1525 Locust Street, 19th Floor
Philadelphia, Pennsylvania 19102
215-772-1000
Attorney for Plaintiffs

Date: March 14, 2023